## Case No. 12,953.

### SLOCUM et ux. v. MARSHALL et al.

[2 Wash. C. C. 397.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1809.

EQUITY — RELIEF FROM DEED — RECONVEYANCE — PROCEEDS OF PART SOLD.

Where a conveyance had been made of her real estate by a daughter to her father, immediately before her marriage, under a belief that she would be benefited by the same, and that the property conveyed by the deed would become hers after the decease of her parent; and where the operation of the conveyance was to deprive the daughter of the estate; the court decreed a conveyance of the property, and an account of the proceeds of the part which has been sold, so as to effect the justice of the case, and to give to the daughter the property to which she would have been entitled, had not the conveyance been made.

[Cited in Taylor v. Taylor, 8 How. (49 U. S.) 201.]

[Cited in Bowen v. Hughes (Wash.) 32 Pac. 99. Cited in brief in Fletcher v. Jackson, 23 Vt. 588; Greene v. Harris, 10 R. I. 385; Hershey v. Weiting, 50 Pa. St. 243; Miller v. Simonds, 72 Mo. 683. Cited in Munson v. Carter, 17 Neb. 301, 27 N. W. 211. Cited in brief in Rankin v. Patton, 65 Mo. 382. Cited in Troll v. Carter, 15 W. Va. 582. Cited in brief in Walker v. Walker, 25 Mo. 374.]

The bill states, that the female plaintiff was the only child of Christopher Marshall by his first wife Elizabeth, who died in 1781 shortly after the birth of this daughter, entitled to a considerable real estate; of which, a tract of land in Bucks county, about twelve or thirteen acres of meadow land near Philadelphia, and a house and lot in Southwark, were parts. In 1781, a day or two before her death, Mrs. Marshall, by deed, conveyed the above-mentioned tract of land in Bucks county, and the meadow tract, in trust for her husband in fee, and the residue of her estate in trust for her daughter; but this deed was not accompanied by the private examination of Mrs. Marshall, and of course was invalid. Mr. Marshall, however, not aware of this defect, made his will in 1799, and devised to the female plaintiff both of the tracts of

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

land to which he supposed himself entitled under the above deed. The bill then states, that the female plaintiff was, in June, 1805, prevailed upon by her father to convey to Z. Collins these two tracts of land, to the use of her father, in fee, but with a parol declaration of trust by the father, that it was intended for the benefit of his daughter, the plaintiff. That this conveyance was made after the addresses of the plaintiff, Slocum, to the female plaintiff, had been made, and favourably received in the family of Mr. Marshall; but that this conveyance, as well as another made by the female plaintiff to her said father, of the house and lot in Southwark, the day before her marriage, was unknown to the plaintiff, Slocum, until after his marriage. The prayer of the bill is for an account of the proceeds of the Bucks county land, which the father, Mr. Marshall, had sold for about 8000 dollars, and for a conveyance of the meadow land, and the Southwark property. The answers of the executors of Christopher Marshall, and of his children by the second marriage, admit the conveyances as stated in the bill, but deny the trust, except in relation to the Southwark lot, which they say they are willing to convey. They admit, however, that Christopher Marshall died intestate, as to the Bucks county and meadow land, and other property, to the value of about 5000 dollars; all acquired subsequently to the making of his will, to one-fourth of which the plaintiffs are entitled. Some witnesses were examined in court, on the hearing; and upon their testimony, the amount of which will be noticed in the opinion, the cause turned.

WASHINGTON, Circuit Justice (PETERS, District Judge, absent), delivered the opinion of the court.

The first question in this cause, is, whether the complainants are entitled to be relieved against the deed executed by the female complainant on the 26th of June, 1805, either upon the ground of a parol declaration of trust, inconsistent with the absolute nature of the conveyance; or upon the ground of fraud, in reference to the circumstances under which it was given, as they respected the grantor, or the subsequent rights of her husband? It is sufficient to say, in answer to the first question, that there is no evidence of a declaration of trust, either written or parol, by which the nature of that trust can at all be understood; and the attempt to create and to enforce a specific trust, from the loose and equivocal expressions of the parties, made at different times and upon different occasions, would be inconsistent, not only with the spirit and policy of the statute of frauds, but with the general rules of evidence. In this case, it is true, the statute of frauds is not pleaded, or relied upon; but it is still

necessary that the parol declarations of a trust should be plain and unambiguous, before the court can change the absolute nature of the conveyance, and decree an execution of a trust not expressed in the deed. It is impossible for this court to say, whether any agreement upon this subject took place between the father and daughter; or if any, what it was. From Mr. Collins's testimony, it would seem, that the intention of Mr. Marshall was to dispose of the Bucks county land; and after bestowing a part of the purchase money upon his daughter, who was about to be married, to invest the residue in some productive fund. As to the meadow tract, that his design was to give her that by his will. Hill confirms by his testimony this evidence, in relation to an intended gift to the daughter; but would lead us to suppose, that instead of money, it was the intention of Mr. Marshall to bestow upon his daughter a house, in case she and her husband should determine to live in Philadelphia. The testimony of Weir & Beisley affords very little satisfaction upon this subject. as it is quite uncertain whether the re-conveyance which Mr. Marshall declared he meant to make to his daughter, referred to the property conveyed by her to him in June, 1805, or to the Southwark lot. From the whole of this evidence, then, it does not appear, whether Mr. Marshall had bound himself, or not, by any promises to his daughter, to re-convey, or to devise this property to her, or to dispose of it in any other manner for her use; or, whether his different conversations with the witnesses extended any further than to express his own intentions in relation to the property. If, then the court were called upon to enforce the execution of any specific agreement between the father and daughter, I should consider the evidence too uncertain and indefinite on which to found a decree.

Taking this deed. therefore, as an absolute one, the next question is, can it be supported as such? Consider the situation of the parties to it. The grantor, a young lady who from her birth had but on one occasion, and that for a short period, left the paternal roof, bound to him by the strong ties of filial affection, duty, and respect—accustomed, at all times, to repose in his advice and opinion the most unbounded confidence, and to consider even the request of such a parent as equivalent to a command,—is informed by him that a certain portion of her property, about two-fifths in value, had been conveyed to him by her mother; but that the same, from some legal objection, had failed to take effect. She is then requested to confirm this title, and is at the same time assured by the father, that his design in obtaining this confirmation, is to promote her interest as well as his own. She reflects upon the proposal, and. influenced by the double motive of promoting her own interest and that of her father, and at the same time fulfilling the intentions of her dead mother, she consents to execute the conveyance. It does not appear that the daughter had any distinct idea of the manner in which this conveyance was to benefit herself, or to fulfill the intentions of her mother; because, it must at once have struck her, that an unqualified confirmation of her mother's grant would be completely destructive of her own interest, and consequently that the two objects she had in view, were incompatible with each other. It is obvious, therefore, that her conduct in this affair was altogether influenced by the declaration and by the advice of her father, in which she appears to have placed the most implicit and respectful confidence. A transaction attended by such circumstances. will naturally excite the jealousy of a court of equity. I know not what conversations passed between the father and daughter; nor whether any, and what particular inducements were held out to her, for parting with so great a portion of her fortune. But this is certain, beyond all doubt, that she had been impressed, generally, with the belief that her interest was to be consulted; and that she acted under that impression. Yet nothing could be more inconsistent with her interest, than the deed which she was prevailed upon to execute. That a fraud or imposition of any kind, was at any time meditated against this lady by her father, the fairness and purity of his character forbid me for a moment to suspect. Independent of his general character, the cause furnishes abundant evidence to repel any insinuation to his disadvantage in this respect. And from this evidence, it is not difficult to conjecture in what manner the conveyance was intended to promote the interest of the two parties to it, and at the same time to gratify the laudable wish of the daughter to fulfil her mother's intentions. It is to be remarked, that more than two-thirds in value of this property was entirely unproductive, and of course could add nothing to the revenue of the father, whose interest was only that of a tenant for life. By converting it into money, and investing that in other property of a more active nature, this inconvenience would be remedied. But the father had no power to sell the fee simple interest in the estate, without being enabled by his daughter to do so. The plan suggested to her was adequate to the purpose, and was therefore adopted. In this way the interest of the father was promoted. On the other hand, he had devised the whole of this property to his daughter; and not knowing, as is highly probable, that the estate would not pass by this devise, but would be considered as a lapsed devise, he at once perceived that his daughter could not be injured by the conveyance. The deed from the mother was intended to give him the absolute control over the property, and

that from the daughter gave effect to that intention. The daughter was to be benefited in two respects—by an advance of money as an outfit on her marriage, and by the protection which her father would be enabled to afford her, in the event of any misfortunes which might befall her intended husband. That these were the objects contemplated by the father, is strongly supported by the evidence; and it is not improbable that they were communicated to the daughter. But the will of the former having proved ineffectual for securing to the latter the consideration which induced her to make the deed, a court of equity can do nothing less than to set aside the deed, as having been made under a mistake. and for a consideration which has failed. But in doing this, I am clearly of opinion, that the intention of Mr. Marshall would be frustrated, by considering any part of the advances made by him to his daughter as a gift, in addition to her own fortune. I wish I could feel satisfied in depriving her also of any part of his other estate, in which it was decidedly his intention she should not participate. Upon this subject, however, my opinion is not yet conclusively formed; and for the purpose of hearing the counsel upon that point, in case it should not be compromised in the meantime, I shall reserve it for future consideration.

I shall decree a conveyance to the complainant, Elizabeth F. Slocum, of the meadow tract and the Southwark lot; and an account of the money received for the tract in Bucks county; and of all advances made by Christopher Marshall for his daughter, since the 26th of June, 1805, or towards the improvement of her property before or since that period.