# N. Y. SUPERIOR COURT.

WILLIAM P. POWERS agt. PETER J. POWERS, Administrator of the Estate of ANN POWERS, deceased, and THOMAS KIVLIN.

*An administratrix no authority to make a gift of a portion of the estate, nor to receive a deed in her own name of any part of the estate.*

An administratrix has no right to make a gift to any person of any part of the assets of the estate. Neither will the law give effect to such an illegal alienation.

It is an improper act for an administratrix to sell a portion of the assets of the estate, and in payment take a conveyance of property to herself individually for her own use and benefit and ultimate disposition.

Where the plaintiff, just after reaching his majority, conveyed to his mother, individually, his share in his deceased father's real estate, for the expressed consideration of $5,000, and took from his mother, as administratrix, a bill of sale of a store of goods, with the good-will of the business, belonging to his father's estate, for the expressed consideration of $5,000.

*Held,* that the plaintiff had no discharge for his liability to his father's estate for the store conveyed to him.

*Held,* also, that the deed to the mother was a distinct transaction and did not operate as a discharge ; and consequently there appeared to be a failure of consideration for the deed itself.

Besides, the law scrutinizes carefully all conveyances from a child to a parent. Its policy is to prevent the sacred obligation of filial duty and affection from being perverted to any inequitable and unjust purposes.

Considering all the circumstances under which the conveyance by the plaintiff to the mother was executed, the conclusion arrived at is not one a court of equity should sustain. Conveyance set aside.

*Tried at the May Special Term,* 1872.

THIS action is brought to set aside a conveyance of certain real estate in the city of New York, made by the plaintiff to his mother Ann Powers, and also a subsequent conveyance

of the same premises, made by her in her lifetime to the defendant Thomas Kivlin.

*Ambrose Monell*, for plaintiff.

*Frederick Smyth and John McKeon*, for defendants.

Curtis, *J.* — William P. Powers, Sr., the father of the plaintiff, died on the 25th day of June, 1866, intestate, leaving Ann Powers his widow and William P. Powers the plaintiff, Peter J. Powers, and Margaret Powers his children and only heirs at law. The deceased at the time of his death owned personal and real estate, the latter being in this city. Upon his decease each of the children became entitled to an undivided third part of the real estate, subject to the dower of the widow, their mother, Ann Powers. At this time the plaintiff was nearly twenty years of age, the daughter Margaret about sixteen years of age, and the son Peter had arrived at his majority.

On the 31st day of August, 1867, the plaintiff executed a deed to his mother Ann Powers, of his undivided one-third of the real estate which had belonged to his father and which was recorded September 11th, 1867. The plaintiff became twenty-one years of age on the twenty-fifth day of July preceding the execution of this conveyance, which is one of those which he seeks by this suit to set aside. The consideration named in the deed is the sum of $5,000. The plaintiff was married on the 15th of September, 1867.

The defendant Thomas Kivlin, married the daughter Margaret November 3d, 1867, and she died without issue November 7th, 1871.

The mother, Ann Powers, on the 11th day of July, 1868, conveyed to the defendant Thomas Kivlin, the interest which had been conveyed to her by the plaintiff in the real estate left by her husband, and also other interest for the consideration as expressed in the deed of $2,000 which deed was

recorded October 7th, 1869. The son, Peter J. Powers, on the 30th of July, 1867, conveyed to his mother, Ann Powers, his undivided third part of the real estate left by his father, and which was also embraced in the deed by her to the defendant Thomas Kivlin.

On the 11th of July, 1868, Margaret Kivlin conveyed her undivided third part of the real estate left by her father to one Thomas Kenny, for the consideration as expressed in the deed of the sum of $10,000, and her mother, Ann Powers, executed a release of her dower for the consideration of one dollar.

On the same day Thomas Kenny conveyed the premises to the defendant Thomas Kivlin, for the like consideration of $10,000 as expressed in the deed. Both of these deeds and the release of dower were recorded October 7th, 1869.

Ann Powers, the mother, died April 17th, 1872, after the commencement of this action in which she was one of the defendants, and which, since her death, has been continued against her administrator the son Peter J. Powers.

By the deeds, the real estate of which the father of the plaintiff died seized, has been conveyed to the defendant Thomas Kivlin.

Wm. P. Powers, Sr., the father of the plaintiff, at the time of his death, and for many years previous had kept a liquor store in Chambers street. He resided with his family over the store. Some ten years before his decease, he took the defendant Thomas Kivlin, into his house when disabled by an accident, had him cared for, and from that time forward as long as he lived, he kept the defendant Thomas Kivlin in his house, treated him as a member of his family, received no pay for his board and lodging, and it appears that the most intimate and confidential relations existed between them.

The mother of the plaintiff, Ann Powers, was an industrious woman, with few acquaintances, seldom leaving her house except when called by religious or domestic duties, and unable to read or write.

The defendant Thomas Kivlin, continued to remain in the family after the decease of her husband. Friendly and confidential relations between him and all the other members of the family had always existed prior to that event, and continued to do so until after the execution of the deed by the plaintiff to his mother. She became the administratrix of her husband's estate, but the business was transacted and the checks drawn by the defendant Thomas Kivlin, who had in the mean time been elected, and was then discharging the duties of a civil justice.

The plaintiff was employed by his mother to attend to the bar, and carry on the business at the liquor store. He continued so employed up to the time he executed the deed to her.

No inventory was made of the personal estate, and very little light is thrown upon its amount or nature. The deceased appeared to owe no debts of any consequence. The balance at that time to his credit in the Chemical Bank was $10,267.31. The good-will, lease and stock in his liquor store, appears to have been worth at that time about $5,000 or nearly that.

The real estate left by deceased, was worth, at the time the plaintiff conveyed his share to his mother, from $30,000 to $35,000, and the portion that was improved rented for about $2,450 per annum.

The day after he so conveyed his share to his mother, she, by a bill of sale of that date, September 1st, 1867, executed by her as administratrix of her husband's estate, and so describing herself, conveyed to him "The stock, fixtures, bar and gas fixtures" of the liquor store in Chambers street, and the lease and good-will of the business. There is no sum specified in the bill of sale as the consideration for the same. The defendant Thomas Kivlin, was the subscribing witness to it, and also took the acknowledgment of the deed from plaintiff to his mother as a justice. About two weeks after the marriage of the plaintiff, to which his mother was opposed, she together with her son Peter, and her daughter Margaret,

and the defendant Thomas Kivlin, removed from the premises in Chambers street. This was at the end of September, 1867. Thomas Kivlin, soon after purchased a house in Oliver street, and Mrs. Powers and her daughter, as long as they lived, resided with him, and the son, Peter, still continues to do so.

The plaintiff brought his wife to reside in the Chambers street premises, and at that time there was an altercation between him and the other members of the family, and he had very little intercourse with them after that.

The plaintiff, after the death of his father, manifested very little business capacity. The business of the place was indifferently conducted and declined. He was reckless, without much experience, very young for the responsibilities and temptations of the position, and addicted to the excessive use of liquor. As to the plaintiff's habits in this last respect there is some conflict of testimony, but I can come to no other conclusion from the evidence, than what I have specified.

The plaintiff testifies that he was intoxicated when he signed the deed to his mother, and unconscious of the effect of the instrument, and that he did not discover that he had conveyed away his share of his father's real estate until about the 1st of June, 1870, when his counsel discovered such a conveyance on record. The plaintiff and Thomas Kivlin the defendant, are the only survivors of those who were present at the execution of the instrument. Their testimony is very conflicting.

The plaintiff testifies that the defendant Kivlin, came into the bar-room, where plaintiff and six or seven others were drinking, and as he was going up stairs to his supper, said " I want you up stairs," that he accompanied him up stairs where his mother was sitting, and the defendant said to him " I have got a paper I want you to sign," and he pulled it out of his inside coat pocket and said " sign this." ' That he said " Is it all right," and the defendant said " yes," and he signed it. That he never read the paper; that it was not explained to him; that he never received a dollar consideration for it, and

never knew until June, 1870, that he had executed a deed, and that he was intoxicated at the time he signed it.

The defendant Kivlin testifies that previous to the execution of the deed, there were frequent conversations between the mother, the three children and himself, as to the boys getting their shares of the property, and that the plaintiff was to take the store for his share at $5,000. That at the request of plaintiff's mother, he had the deed prepared. That while he was at supper, plaintiff came up and asked him if he had the deed. He told him he had, and handed it to him. Plaintiff read it all over and said "Kivlin, if I sign this, I have no more claim have I," and he replied to him "no you have not, no more claim except your mother likes to give you any-thing." He also states that the plaintiff said to his mother "that this deed conveyed to her, his share in his father's property," and she replied if it conveyed ten times as much, she had a right to it. He also states, that the plaintiff executed the deed at this interview, that he had not the slightest appearance of liquor at that time, and that his sister Margaret was present.

On the part of the defendants it is claimed, that the bill of sale of the store, executed on the day after, by the mother as administratrix to the plaintiff, was in reality, the way in which the consideration of $5,000 expressed in the deed, was paid by the mother to the plaintiff.

He, on the other hand, insists that it was a gift to him, from his mother. These transfers seem to have been made, with-out the presence or advice of counsel, or of parties outside of those present at the execution of them.

An administratrix has no right to make a gift to any person, of any part of the assets, and especially of the magnitude and value of this store. Neither will the law give effect to such an illegal alienation. On the other hand, it is an improper act for an administratrix to sell a portion of the assets, and in payment take a conveyance of property to her-self individually, for her own use and benefit and ultimate

disposition. The law does not give effect to such an illegal appropriation. The effect of those transactions is, that the plaintiff is still indebted to his father's estate for the value of the property conveyed to him by the bill of sale, and the mother received a conveyance to herself individually, of the plaintiff's share in his father's real estate, without the payment of any consideration by her to him for it. The plaintiff has no discharge for his liability to his father's estate for the store conveyed to him.

The deed to the mother is a distinct transaction, and does not operate as a discharge. There consequently appears to be a failure of consideration for the deed itself.

But, in addition to this, another difficulty arises, as to giving effect to the deed from the plaintiff to his mother. The law scrutinizes carefully all conveyances from a child to a parent. Its policy is to prevent the sacred obligations of filial duty and affection from being perverted to any inequitable or unjust purpose. The courts in this country have not gone as far as they have in England to establish any presumption of law against the validity of such transfers, but they will not sustain such a transaction, where it appears that any advantage has been taken of the inexperience of the child, or of the confidence naturally reposed by a child in the suggestions, advice and judgment of a parent.

In the case of *Bury* agt. *Oppenheim* (26 *Beavan*, 594), the gift of a daughter to her father immediately after she came of age was set aside, and it was held that the father was a trustee for the daughter and bound to repay it. In *Slocum* agt. *Marshall* (2 *Wash. C. C.*, 397), where a daughter conveyed real estate to her father immediately before her marriage, under a belief that she would be benefited by the same, and that the property would become hers after the decease of her father, and where the operation of the conveyance was to deprive the daughter of the estate, a reconveyance was declared. In *Carpenter* agt. *Heriot* (1 *Edw.*, 338), a bond by a son to his father on coming of age for a larger

amount than the sum advanced to the son during infancy was set aside. Also in *Baker* agt. *Bradley* (7 *De Gex, Mc-Naughton & Gordon,* 597), a mortgage made by father and son to secure the debt of the father, the son having no separate advice was set aside.

In *Wright* agt. *Vanderplank* (1 *Jurist* [*N. S*]., 932), where a parent was in possession receiving the rents, and the daughter executed a deed to him on her coming of age which was prepared by his solicitor it was set aside. In *Wallace* agt. *Wallace* (2 *Drury & Walsh,* 470), it was held that where there were no circumstances calling upon the son to give up anything to the parent, no younger children to provide for, it was a case of oppression. In *Archer* agt. *Hudson* (7 *Beavan,* 557), it was held that in cases of a conveyance by a child to a parent, courts of equity will see that the child is placed in such a position as will enable it to form an entirely free and unfettered judgment, independent altogether of any sort of control. In *Hoghton* agt. *Hoghton* (15 *Beavan,* 278), it was held, that where the parent takes direct benefits from a son, the property must be resettled in a proper and reasonable mode and with regard to the interests of the family, and that the son should have the benefit of professional assistance and advice secured to him. In *Young* agt. *Peachy* (2 *Atkyn.,* 254), a conveyance obtained from a child for one particular purpose, and then applied to another, was relieved against. Viewed in the light of these decisions the question arises, how we are to regard the present case ? The plaintiff at the time he executed the conveyance, was inexperienced in transactions of that character. He had shown no business capacity or maturity of judgment; but, on the contrary, had neglected and mismanaged the store. He was addicted to intemperance, had arrived at age only the twenty-fifth day of the preceding month, and was then soon to be married. He had no legal aid or advice respecting the step he was about to take. His father, it is shown, was a man of generous impulses, and warm attachments, and had many friends of sagacity,

experience and ability to advise, and who would willingly have advised his son, but no one was consulted outside of the household. His mother, and the defendant Kivlin, possessed his entire confidence. The latter had been for ten years a friend and inmate of the family, the adviser of his mother, and in whom, the evidence shows, they all placed the most implicit confidence. He was a man who during that period and upwards, had held responsible and honorable public positions, and previous to that, had had a business experience of several years, and who from his maturity and judgment, might be reasonably considered worthy of such confidence. In this transaction he appears to have been the intelligent and moving party. He procured the deed, the presence of the plaintiff, and produced it for execution. The mother, though she could neither read or write, and had led a confined domestic life, seems to have had a strong will and determination that the plaintiff should execute the deed. When he told her, as the defendant Kivlin testifies, " that this deed conveyed to her his share in his father's property," she said " if it conveyed ten times as much she had a right to it." This would indicate that no ordinary pressure was brought to bear upon him by his mother to procure the conveyance. There is nothing in the evidence that justifies the assertion of such a right by the mother.

The plaintiff says that the sister Margaret was not present, the defendant Kivlin contradicts him. She was an inexperienced girl, but a few weeks from the convent, where she was being educated, and there in the presence of the defendant, who in a short time was to become her husband, had little capacity to advise the plaintiff, even if she had felt an inclination to do so. The mother during her lifetime, continued to collect the rents of the property, though she conveyed it to the defendant Thomas Kivlin, in July following the execution of the deed to her. The consideration of $2,000 mentioned in that deed, is a grossly inadequate consideration, being but a little more in amount than the one year's rent

accruing upon the two shares conveyed. This is also more apparent, when the deed of the share of the sister is referred to, and which expresses a consideration of $10,000. Ought a court of equity to uphold an act by which a child is, as in this case, divested of his patrimony, by the action of a parent and a most trusted and confidential friend for their benefit, and without adequate or legal consideration for the transfer? I have failed to find any decisions tending to support the position of the defendant.

Considering all the circumstances under which the conveyance by the plaintiff to the mother was executed, I am led to the conclusion that it is not one, that a court of equity should sustain. Nor do I see, that the defendant Thomas Kivlin, stands in any different position than the mother, Ann Powers. He had notice of all the circumstances attending the conveyance to her. He was one of the principal actors in the transaction. He paid but little for the deed of the property to himself, if he paid the consideration expressed in the deed, and he alone appears to have derived any very substantial advantage from the conveyance by the plaintiff to his mother.

It may be, that he holds this estate, to protect it for the sons of his benefactor, until such time as he deems they may better care for it, and that motive may have guided him in his course, in respect to it. But the law is averse to secret and unwritten trusts, and in reference to transactions like the present, whatever may be the motives and designs of those who thus become the beneficial recipients, classes them at the best, as constructively fraudulent.

Entertaining these views in regard to the conveyances from the plaintiff to his mother, and by her to the defendant Thomas Kivlin, I think they should be set aside as against the plaintiff, and that he should have the relief prayed for in the complaint.