# LUCAS *v.* BROOKS.

1. A person in possession of land who takes a lease from another who has bought and claims the land leased, is estopped from denying the title of such other person, or showing that such person was but trustee of the land for him.

2. The act of Congress of July 2d, 1864, which says that there shall be no exclusion of any witness in civil actions because he is a party to or interested in the issue tried does not give capacity to a wife to testify in favor of her husband.

3. A writing bearing even date with a paper having the form of and purporting to be the last will and testament of the party, and disposing clearly and absolutely of all his estate,—which writing refers to the paper as the party's "will" and speaks of itself as "a letter" written for the information and government of the executors, so far only as they see fit to carry out the testator's present views and wishes,—has no testamentary obligation, even though it direct the persons to whom it is written to allow such and such persons to have specific benefits named in specific items of property.

4. Evidence which may divert the attention of the jury from the real issue —that is to say, immaterial evidence—should be kept from the jury.

5. The improper exclusion of a record is not error when the party offering it has proved, in another way, every fact which the record, if it had been admitted, would prove.

6. Prayers for instructions which overlook facts of which there is evidence, or which assume as fact that of which there is no evidence, are properly refused.

7. The question of waiver of a notice to quit is always in part a question of intent, and there can be no intent to waive notice, when the act relied on as a waiver has been the act of the party's agent, unknown to the principal and unauthorized by him.

8. An assignment of error which alleges simply that the court below erred in giving the instructions which were given to the jury in lieu of the instructions asked for—it not being stated in what the error consisted or in what part of the charge it is—is an insufficient assignment under the 21st Rule of court.

9. Where one writes to a man's wife (there being a relationship by blood between the party writing and the wife) proposing to her to occupy a certain farm on which she and her husband were then living, and to pay a certain rent therefor, which offer she accepts, and there is nothing in the correspondence beyond the fact that the property is offered to the wife, and that the wife accepts it, to infer a purpose to give it to her to the exclusion of her husband, the husband is not excluded. The lease enures to his benefit and brings him into the relation of a tenant to the lessors.

ERROR to the Circuit Court for the District of West Virginia; in which court P. C. Brooks brought ejectment against Robert Lucas for a farm.   The case was thus:

The farm, in 1844, was owned by Edward Lucas, the father of this Robert Lucas.   In the year mentioned one Towner recovered three judgments against Edward Lucas, which became liens on the farm.   In 1848, Edward Lucas, being embarrassed, conveyed the farm with general warrantee to his son, the said Robert.

In 1858, Towner (Edward Lucas being now dead) filed a bill against his executor, against Robert Lucas, purchaser of the farm, and other heirs, to have satisfaction.   Robert Lucas answered, admitting the liens and his purchase of the farm from his father; alleging that it was subject to other liens by judgments and deeds of trust older than these of Towner, and stating that to enable him to make the purchase he had borrowed $9000 from one R. D. Shepherd (whose niece Catharine he had married), and paid the same upon such prior liens; that these were assigned and now held by the said Shepherd as security for the loan, and should be paid before the liens of the complainant.   The court, after various references and reports, ordered a sale of the farm, and it was sold; Shepherd, who in the meantime had become the owner of all the liens reported by the master as existing, becoming the purchaser and paying only the costs. Lucas and his wife, the niece, as already said, of Shepherd, were at this time in possession.

Shepherd thereupon, by writing, dated August 30th, 1859, agreed that *Lucas* (nothing being said about the wife) should continue on the land as his tenant until the 1st of April, 1861, at a rent of $600.

Shepherd died in November, 1865.   His will, proved on the 12th of March following, ran thus:

" *First.* Having given property and money at different times to my family connections, the greater part of which stands charged on my books under the head of an account there opened and called 'Family Accounts,' I will and bequeath to each

therein named whatever may have been so given and charged, or anything that I may hereafter give during my lifetime.

" *Second.* I will and bequeath to my daughter, Ellen Brooks, and to her two sons, Peter C. Brooks . . . and Shepherd Brooks . . . all my property, real, personal, and mixed, . . . giving one-third to each; and *I direct that they may be put into possession of it without delay.*

" *Third.* I appoint my said two grandsons, P. C. Brooks and S. Brooks, executors of this my will, giving *them seizin of my entire estate.*"

Accompanying this will, and of the same date with it, was a sealed letter of the testator to his daughter and two grandsons named, in which he says:

" I have this day made my *will*, in original and duplicate, one copy with this letter deposited with you, . . . *but write this letter for your information and government so far only as you may see fit to carry out my present views and wishes.* Circumstances frequently change, so as to make what was proper and expedient at one time the reverse at another time. I therefore rely on your doing what is right, keeping in view what you believe my wishes would be were I living."

He mentions that a brother of his, named James, had died in 1837, with debts exceeding half a million of dollars; that he, the writer, had wound up his estate, and after years of toil and anxiety had worked through and saved himself from ruin; that he had derived no benefit whatever from his said brother's estate, and had most strictly complied with all the requests which his brother had made as to the residue of it, after paying certain debts.

He says further:

" I take very little interest in any of my family connections here, except Henry Shepherd and J. H. Shepherd, my two nephews; for all the others, of both sexes, I have done as much as I ever wish done for them, and more than some of them deserve. Should ever Henry or James require aid or assistance, give it to them in such way as you may deem best."

And after some expression of regard for a young man, whom he requests his executors to befriend, and a request

that a ship, which was then named Montgomery, should be called Alexander Hamilton, a great admiration for which statesman he avows, he adds:

"As to the-plantation in this county, belonging to me and known as the Lucas farm, allow Catharine Lucas, my niece, to live upon it during her lifetime, on the condition that she pay you a small rent of three or four per cent. on its cost, which is $24,000, but don't sell it unless you get the cost. Then give my said niece $10,000 out of the proceeds, well secured on her children."

Though the lease by Shepherd to Lucas, mentioned some distance back, was by its terms limited as there stated to the 1st of April, 1861, Lucas and his wife remained on the farm after that time, and were living on it when Shepherd died.

After that event, P. C. and S. Brooks, named by him, R. D. Shepherd, as his executors, though the will was not yet proved, wrote to Mrs. Lucas as follows:

"BOSTON, MASS., November 29th, 1865.

"DEAR MADAM: As *executors* of the estate of Mr. R. D. Shepherd, we address you regarding the disposition of the farm belonging to him, on which you live. We have two propositions to make to you, either of which you can accept. First, to occupy the place and pay therefor to us, or our agent, the yearly rent of $600, on the 1st of December of each year; the lease to begin January 1st, 1866. If the rent should be increased, or any other change made, you are to receive one year's notice of it in advance; you are to make all repairs and to pay all expenses on the property excepting taxes, not allowing it to deteriorate. Second, the place to be sold as soon as convenient; to be paid for one-half in cash, to come to us; the other half to remain on mortgage, which will be put in trust for your benefit during your life, and go to your children outright at your death. Meanwhile, until the sale, and as long as you occupy the place, we expect you to pay rent at the rate of $600 per annum, beginning January 1st, 1866.

"Yours, &c.,

"P. C. BROOKS,

"SHEPHERD BROOKS."

To this Mrs. Lucas replied:

"Elmwood, Va., December 11th, 1865.

"Messrs. P. C. and S. Brooks.

"Dear Sirs: Your letter of November 29th was received the 2d instant. I have concluded to accept of your first proposition, that is, rent this farm at $600 a year. As all property is rented here the 1st of April, I wish to make one request, which is to change the date. The rent to be paid the 1st of January, the lease to begin the 1st of April. My reason for making this request is, in case I should be required to leave the farm, I would then have time to find another home.

"Yours, &c.,

"Catharine Lucas."

Subsequently, the commencement of the lease was by mutual agreement fixed for the 1st of April, instead of the 1st of January. After this Mrs. Lucas continued to pay the stipulated rent until 1868, but the rent subsequent to that time was withheld. On the 19th of May, 1866, Mrs. Ellen Brooks and Shepherd Brooks, describing themselves as, with the said P. C. Brooks, equal and only devisees of R. D. Shepherd, conveyed to P. C. Brooks all their right, title, and interest in the land, to hold to him in fee simple; and on the 15th of February, 1869, he gave to Lucas and his wife notice that he terminated the lease on the 1st day of April, 1870, and required them to surrender possession of the land on that day. They declining to do this, P. C. Brooks brought an action of ejectment in the court below to recover it.

The defence was, that the possession and right of possession were in the defendant's wife, as her separate estate, after the expiration of Mr. Shepherd's lease to him; that is, after April 1st, 1861. For this purpose the defendant offered in evidence another lease from Shepherd to his wife for one year from April 1st, 1861, at the yearly rent of $900, and offered proof that this was followed by the lease of 1865, already mentioned. This evidence was received.

The defendant then offered the deposition of his wife to

prove a part of his case, contending that it was admissible under the act of Congress of July 2d, 1864,* which enacts that—

"In courts of the United States there shall be no exclusion of any witness . . . in civil actions because he is a party to, or interested in, the issue tried."

The court excluded the deposition, and its action herein was the first error assigned.

He then offered in evidence certain depositions, which tended to prove the following facts, viz., that James Shepherd (the brother already referred to of R. D. Shepherd) died unmarried in 1837, leaving a large estate, and leaving also several brothers and sisters, one of the brothers being father of the defendant's wife; that R. D. Shepherd was in affluent circumstances and a large creditor of the decedent, whilst the other brothers and sisters were poor; that having great confidence in the honor and generosity of his brother R. D. Shepherd, and to secure his debts to him, James Shepherd devised all his estate to his rich brother R. D. Shepherd; that at the same time he left therewith a sealed letter, directed to this brother, directing that out of his estate, after the payment of his debts, his sisters should receive certain sums named, and his nephews and nieces the residue; that the estate (probably by reason of good management upon the part of R. D. Shepherd) yielded a considerable sum after paying the debts, and that therefore R. D. Shepherd paid the amounts to his sisters as directed in the sealed letter, and for a time aided certain of his brothers and nephews and nieces by distribution of the surplus, by virtue of the will and sealed letter aforesaid.

These depositions tended to prove also by admissions of R. D. Shepherd, that he bought the land in controversy for the defendant's wife, and as her separate property; that it was first purchased in 1848, from the father of the defendant, in the name of the defendant, but in equity for his wife;

* 13 Stat. at Large, 351.

that when it was purchased in 1859, in the name of R. D. Shepherd, it was purchased for her benefit.

The plaintiff objected to the reception of this testimony, " and the court sustained the objection so far as it tended to prove that Catharine Lucas derived title to the property in controversy under the will of R. D. Shepherd, and so far as it referred to conversations and other verbal statements held between said witnesses and R. D. Shepherd concerning his purposes as to said farm, to which ruling the defendant excepted."

This action of the court was the ground of the defendant's second assignment of error.

The defendant, for the same purpose of showing the interest of his wife in the land, and the character of their occupancy, offered in evidence the letter already referred to, bearing even date with the will of R. D. Shepherd, written by him, and addressed to the devisees in his will, which the court permitted to be read in evidence only for the purpose of showing the intention of the executors in executing the lease to Catharine Lucas, which restriction of it the defendant assigned as a third error.

The defendant then, for the purpose last stated, and to show the recognition of the plaintiff that his wife had and controlled the possession of the farm, by the service of a notice upon her the year previous to the one given in evidence by the plaintiff, and a subsequent waiver thereof, offered in evidence a transcript of a record from the Circuit Court of Jefferson County, duly certified, in a proceeding in forcible detainer in the case of *P. C. Brooks* v. *R. A. Lucas*, which contained as the foundation of the suit a notice of the plaintiff upon the defendant's· wife, dated March 16th, 1867, and giving notice to *her* that she would be required to surrender possessio of the premises and remove therefrom on the 1st of April, 1868. To this transcript the plaintiff objected, and the objection was sustained and the transcript excluded from the jury. The defendant excepted; this being his fourth assignment of error.

The defendant then offered in evidence a transcript of a

distress warrant (issued upon the affidavit of W. A. Chap-line, representing himself to be agent of P. C. Brooks in the matter), for rent sworn to be due for the year ending April 1st, 1871, a distress accordingly on the defendant's property, and a replevin and forthcoming bond by the defendant. The transcript was certified by the deputy clerk of the court, and was not under the court seal. It was, therefore, objected to and excluded as not properly certified. To this exclusion the defendant excepted, the same being made his fifth assignment of error.

The defendant then proved orally the same thing which the transcript if received would have shown, but his witness (Chapline himself) testified also that he had not been authorized by Brooks to issue the said distress warrant.

The defendant also gave in evidence (to show that the legal title was not in the plaintiff), two deeds of trust with the bonds secured by them, executed by Edward Lucas and his wife, whilst he was the owner of the land; one to R. H. Lee, dated in February, 1847, in trust for Peter Saurwien, the other to H. Berry, dated in 1843, to secure said bonds of him the said Edward Lucas, to Saurwien and Douglass, which had been assigned by them to Robert Lucas, and by him to J. H. Shepherd, trustee, for the sole and separate use of Catharine Lucas, wife of the said Robert.

The testimony being closed, the defendant asked for four separate instructions:

"1st. That the distress warrant sued out by Chapline, as agent of the plaintiff, for rent claimed as due for the year ending April, 1871, levied as it was on the property of the defendant, who had given a forthcoming bond, and being still pending, constituted a waiver of the notice to quit, and, therefore, that the defendant was entitled to a verdict.

"2d. That no expression of disapprobation by the plaintiff or his attorney of the act of the agent in issuing the distress warrant could defeat its operation as a waiver of the notice to quit, while the proceedings on the warrant were pending, and so long as the plaintiff held the forthcoming bond for the property distrained.

"3d. That if there was an outstanding deed of trust, made February 18th, 1847, conveying the legal title to the farm in question to R. H. Lee, in trust for Peter Saurwein, and if neither he nor the *cestui que trust,* nor any one entitled to receive payment of said debt so secured, were made parties to the suit of *Towner* v. *Lucas, executor, and others,* and if the said outstanding lien was of older date than the lien of Towner's judgment, and if the said first-mentioned lien was still subsisting and unpaid, they would find for the defendant.

"4th. That if the debts secured by the deeds 'of trust from Edward Lucas to R. H. Lee and H. Berry, were assigned to J. H. Shepherd as trustee for Catharine Lucas, and if the said R. D. Shepherd was not the owner of the said debts, at the time of the sale under the decree of the Circuit Court of Jefferson County, that proceeding could not defeat the title of the trustees to the deeds of trust to secure their payment, although they may have been audited and credited to him in that proceeding, unless the said J. H. Shepherd and Catharine Lucas were parties to that proceeding."

The court, on its own motion, in lieu of instructions requested, instructed the jury thus:

"The will of R. D. Shepherd grants the land in controversy to the three devisees and legatees, Ellen Brooks, P. C. Brooks, and Shepherd Brooks, and the sealed letter accompanying said will in no wise alters or modifies it, and creates no new estate in any one, and it having been produced at the instance of the defendants, and by them offered in evidence, they are bound by its contents, and are not permitted to impeach the correctness of its statements.

"The letter of P. C. Brooks and Shepherd Brooks, addressed to Mrs. Lucas, the wife of the defendant in this cause, and her reply, and the subsequent agreement by letters changing the time of the commencement of the lease from the 1st of January to the 1st of April, as well as the time of the payment of the rents from the 1st day of January to the 1st of December, constitutes a lease of the premises to her by them, which she may take, but being a married woman, by operation of law, the lease becomes the absolute property of her husband, and thereby creates the relation of landlord and tenant between him and the lessors; and the fact that no particular time is mentioned in the

contract of lease, when such relation should cease between the parties, taken in connection with the fact, that the plaintiffs reserved in the contract the right to increase the rent thereafter, or to make other changes in it, upon giving one year's notice, creates a tenancy from year to year, which may be terminated upon one year's notice as prescribed by said contract of lease.

"The relation of landlord and tenant, having been established, as set forth in the preceding instruction, the tenant is estopped from denying his landlord's title.

"And the fact that there were outstanding liens upon the said land, or that the defendant was in possession of the same at the time that the testator, R. D. Shepherd, became the purchaser under the decree of the Circuit Court of Jefferson County, at the suit of *Towner v. Lucas, executor, et al.*, does not warrant the defendant, under the circumstances of this case, in disclaiming his landlord's title.

"Before the plaintiff can recover, the jury must be satisfied that the notice required by the contract of lease was given, and, if given by the plaintiff, and there was afterwards a distress warrant sued out to recover rent due and in arrear for the leased premises, in favor of the plaintiff by his agent Chapline, the presumption of law would be that it was sued out with the assent of the plaintiff, in which event he could not maintain this action, unless the evidence satisfies the jury, that the agent Chapline exceeded his authority in suing out such warrant, acting without the knowledge or consent of his principal, after his principal, the plaintiff, had, by notice, according to the contract of lease, terminated the tenancy, in which event he would be entitled to recover."

The record adds:

"*To which instructions the defendant excepted.*"

The instructions were assigned as the seventh error.

*Messrs. C. W. B. Allison and D. B. Lucas, for the plaintiff in error:*

*As to the first error.* Was the testimony of the wife properly excluded? The testimony of the husband himself would have been competent. But the interest of the wife

is the interest of the husband. Cases may indeed be well conceived where, in a suit by her husband, the wife's testimony should be excluded upon the ground of public policy, or of domestic peace. But this rule does not apply here, because the testimony was given with the assent of the husband, and in entire harmony with his wishes.

*As to the second error.* The restriction placed upon the evidence given by the depositions of the witnesses, was calculated to mislead the jury by reason of its indefiniteness. As a whole the testimony had a bearing upon the questions of possession, how, when, and from whom obtained, under what lease, if any; whether held by the defendant or his wife, as her separate property, whether by an equitable interest in the fee, with the right of possession, or as tenant for years, from year to year, at will or sufferance, or for life. Some of these questions were important to be ascertained by the jury, before the doctrine of estoppel could be applied. It was thus competent generally, and if any portions were incompetent, they should have been pointed out and excluded.

*As to the third error.* The testamentary letter of Shepherd, dated on the day that his will was, and found with it, should not have been restricted as it was, but was competent in connection with the other testimony, to go to the jury to enable them to determine the character of the occupancy of the defendant and his wife, and particularly whether she had a separate interest in the land. Analyze the letter of November 29th, 1865, by P. C. and S. Brooks to Mrs. Lucas, and then place in juxtaposition with it this testamentary letter.

The former letter (November 29th, 1865), begins thus:

"As EXECUTORS of the estate of R. D. Shepherd, we address you."

Now, does not this offer, made as *executors*, naturally cause us to recur to the *will*, whence all their representative authority was derived? But, upon recurring to the will, as probated, we find no such authority as this letter would in-

dicate.　We must look beyond the formal will for any such power in the executors.　We find it in the letter accompanying the will, and bearing even date.　Here then, we have the key to the action of the executors; the authority under which, as *executors*, they were proceeding to dispose of the Lucas farm.　Here is the *trust*, which the executors (who are also, with Ellen Brooks, the only devisees) accepted, in favor of Catharine Lucas, and which they proceeded to execute.　It matters not, as far as the present question is concerned, whether this letter were mandatory or only advisory.　The present question is: Did' the executors *intend*, in their letter to Catharine Lucas of November 29th, 1865, to offer to her, substantially, the alternative propositions which the sealed letter sets out?

If they did, the court below erred in pronouncing the lease from year to year only.

But if we be wrong, still, was not this duty of construing and comparing separate papers, with a view to extract therefrom the true intent of the contracting parties, a labor for the *jury*, of which the court could not relieve them?　Did not this *duty*, if it devolved upon the jury, correspond to a *right* on the part of the appellant, of which the court below erroneously deprived him?

*As to the fourth error.*　The transcript of the record of proceedings in forcible detainer, commenced by the plaintiff in 1868, was proper evidence to show that the plaintiff, when he gave the notice therein shown, looked upon and treated the defendant's *wife* as the tenant in her own right, by giving the notice to her alone, and the abandonment of the suit when she paid the rent.

*As to the fifth error.*　Was the transcript of the proceedings under the distress warrant properly excluded?　We understand it to be settled, that in the courts of the United States no other certificate or authentication is required, than is required in the courts of the State in whch the Federal court is sitting.　If this transcript was excluded because the attestation was by the deputy, and not the clerk himself, or for want of the *seal of the court*, the ruling in either case

was erroneous.* Now, when the court erroneously excluded primary evidence, and drove us to prove by secondary and inferior testimony the same facts which we proposed so ·to prove by the record, we were substantially injured. We were driven to examine the plaintiff's agent, who stated that what he did was unauthorized. Were we not thus injured? If the record had been received the authority of the agent could not have been drawn in question, without the principal's first dismissing the proceeding. ·

*As to the sixth error.* 1. The first instruction asked by the defendant should have been given, because the jury from the evidence before them would and should have found the facts stated therein, that such facts did constitute a waiver, upon the part of the plaintiff, of the notice to quit which he had given in evidence.

2. So, too, the defendant's second instruction asked for was proper. The plaintiff should have repudiated the act of the agent by a positive act, in discharging the forthcoming bond and dismissing the proceeding.

·3. The third and fourth instructions asked for should have been given. They seem to have been refused because the court was of the opinion that the defendant "·under the circumstances of the case," that is, that by reason of some one or more of the leases was estopped denying the plaintiff's title and right of possession, and that the question of estoppel under the facts proved should not be left to the jury, but should be settled by the court. We treat of this matter further on.

*As to the seventh error.* I.· The first instruction given by the court was calculated to mislead the jury.

Both the legal title and right of possession must be in the plaintiff to entitle him to recover in this action. By the second clause of the will it would seem to be vested in the daughter and grandchildren in equal proportions. But by the third it is vested in the executors as such. "Seizin" (the term used in the third clause) means the legal title, or

---

* Cooke *v.* Hunter, 2 Overton, 113; Code of West Virginia, p. 615, § 5.

lawful right of possession. What else could the testator have meant by the sentence "giving them *seizin of my entire estate ?*"

Both clauses should be construed together and reconciled if possible. This can be done by giving to the executors the possession or right of possession and control for a time, and the legal title, and making the devisees the sole beneficiaries with the right to receive the possession from the executors. If the two clauses cannot be reconciled by reason of being in conflict, then, by the rule for construction of wills, the last clause must prevail.* The plaintiff below recognized the right of the executors to rent, control, and dispose of the land under the will, by the correspondence with Mrs. Lucas and the lease in the name of the executors.

II. The court erred in its second instruction. The lease should be construed in connection with the other evidence, showing her former interest in the land derived from the testator, and thus construed. The lease to Mrs. Lucas was her separate estate and not the property of the husband by operation of law or otherwise. No particular phraseology is necessary to create a separate estate for a *feme covert.*† There was enough here to show the purpose.

This second instruction is erroneous on several other grounds:

1. It removed and precluded from the consideration of the jury an important question of fact depending upon the interpretation of a series of documents, including the sealed letter, viz.: was this a lease from year to year, or for life?

2. It wrongly stated the law, in saying that "a lease to the wife by operation of law becomes the absolute property of the husband." There must be proof of his *assent* expressed or implied; and his property in it is only *qualified*, there being a right of survivorship in the wife.

Again, the lease from the executors did not create a tenancy from year to year.

---

* Sherratt v. Bentley, 2 Mylne & Keen, 149; 2 Jarman on Wills, 741; Rule 7.

† Prout v. Roby, 15 Wallace, 471.

If the rent should be increased, or any other change made, Mrs. Lucas was to have one year's notice of it in advance. It will be seen that no limit is made to the term, but it contemplates a continuance for years. Power is reserved to increase the rent after a year's notice, and also to make other *changes* after a like notice. Does the reservation of the power to make a *change* authorize a *termination* of the lease, as held by the court below?

III. The third instruction of the court is erroneous, because:

1. It touched on the province of the jury; it declared that the relation of landlord and tenant *had been established* [proved], and that the tenancy was *established* [proved], to be from year to year.

2. A person having *entered* under a lease is estopped from denying it. The rule is founded on the importance which the law attaches to good faith. But there was no such entry here. Lucas and wife were already in possession under another title. The lease was at best but an acknowledgment of tenancy by one previously in possession, and the court should have so qualified the application of the doctrine of *estoppel* as to have allowed the jury to determine whether the acknowledgment of tenancy was not procured by fraud or undue influence, or made by mistake, or through ignorance.

There was no deed, and hence no *technical* estoppel; and where possession is not derived from the lease, a mere acknowledgment of tenancy is no *equitable* estoppel. The alleged landlord has not been placed in any worse position, and the question is whether, all things considered, the supposed tenant, by such acknowledgment, ought to be precluded from asserting a superior title in himself.

IV. The fourth instruction was erroneous, because:

1. An outstanding unsatisfied mortgage is a good defence in an action of ejectment, when the defendant has an equitable title.*

---

* Peltz *v.* Clarke, &c., 5 Peters, 481; Marsh *v.* Brooks, 8 Howard, 222.

2. The court repeats the error of deciding upon the " circumstances [facts] of this case," which ought to have been left to the jury.

*Mr. C. J. Faulkner, contra.*

Mr. Justice STRONG delivered the opinion of the court.

Before proceeding to a consideration of the several errors assigned, it may be remarked that if the defendant was in possession under a lease from the plaintiff, or from any one to whose reversion the plaintiff had succeeded, he was not at liberty to controvert the title of the plaintiff or of that reversioner, while he remained in possession. In view of this undoubted principle it is impossible to see how he could have resisted a recovery, if in fact he was the tenant of the plaintiff, or if the plaintiff had succeeded to the title of R. D. Shepherd. But it is very plain that during the lease of 1859, he was Shepherd's tenant, and that after its expiration he continued a tenant from year to year under that lease; unless the one made in 1861, or that made in 1865, supplanted it. Both the later leases were made to his wife. As he did not dissent, they became her chattels real, and during the coverture they belonged to him. Necessarily, therefore, his possession was in law under those leases, or one of them, or it was as a tenant of Mr. Shepherd from year to year, in virtue of his holding over after the expiration of the lease of 1859. How then he could show, so long as he retained that possession, that Shepherd had no title, or that Shepherd held in trust for his wife, or that any one who had succeeded to Shepherd's title, or one, though not thus succeeding, to whom he had attorned by the payment of rent, had no title or held in trust for his wife, we are not informed, nor can we be. That was a defence which he was not at liberty to set up, even upon his own showing of the facts. That the plaintiff had succeeded to Shepherd's title is, we think, very certain. The will, as we have seen, devised and bequeathed to Ellen Brooks, the testator's daughter, and to her two sons, all his property, real, personal, and

mixed, and directed that they should be put into possession of it without delay.  If this stood alone, it could not be doubted that the devisees named took the entire estate of the testator.  The third item of the will, however, it is insisted, gave the estate to the executors.  Its language is: "I constitute and appoint my two grandsons, Peter C. Brooks, the younger of that name, and Shepherd Brooks, executors of this my will, giving them seizin of my entire estate."  But this clause must be construed consistently, if possible, with the other provisions of the will, so as to give effect to all its parts.  Hence, it is clear that the testator intended by the word "seizin," possession; and that he gave it to his executors for the purposes which he had in view when he constituted them executors.  The will exhibits no reason why they should be invested with the title to the testator's real estate, and such an investiture is directly in conflict with the second item, which casts the title by apt words upon his daughter, the plaintiff, and Shepherd Brooks. Hence, it must be held that by force of the will and the deed from Mrs. Brooks and Shepherd Brooks, the plaintiff had succeeded to the reversion of Mr. Shepherd, and to all the right which his co-devisees ever had.  His title, therefore, was unassailable by the defendant, and his right to the possession as against the defendant was unquestionable, if notice of the termination of the lease, and of his intention to resume possession, was duly given.

This view of the case makes the consideration of the specific errors assigned very easy.  So far as they are aimed at showing that the defendant did not stand in the relation of a tenant of the plaintiff, or of one to whose reversion the plaintiff had succeeded, they are material, but unless that was shown, they can have no effect upon the judgment which has been obtained.

The first is, that the court refused to admit in evidence the deposition of Catharine Lucas, the wife of the defendant. That it is a rule of the common law, a wife cannot be received as a witness for or against her husband, except in suits between them, or in criminal cases where he is prose-

cuted for wrong done to her, is not controverted. But it is argued, because Congress has enacted that in civil actions in the courts of the United States there shall be no exclusion of any witness because he is a party to, or interested in the issue tried, the wife is competent to testify for her husband. Undoubtedly the act of Congress has cut up by the roots all objections to the competency of a witness on account of interest. But the objection to a wife's testifying on behalf of her husband, is not and never has been that she has any interest in the issue to which he is a party. It rests solely upon public policy. To that the statute has no application. Accordingly, though statutes similar to the act of Congress exist in many of the States, they have not been held to remove the objection to a wife's competency to testify for or against her husband. And in West Virginia it has been expressly enacted that a husband shall not be examined for or against his wife, nor a wife for or against her husband, except in an action or suit between husband and wife.* Were there any doubt respecting the question, this statute would solve it, for the act of Congress of July 6th, 1862,† declares that the laws of the State in which the court shall be held, shall be the rules of decision as to the competency of witnesses in the courts of the United States.

The second assignment of error is, that the court sustained the plaintiff's objections to certain other depositions offered by the defendant, so far as they tended to prove that Catharine Lucas obtained title to the property in controversy under the will of R. D. Shepherd, and so far as they referred to conversations of the witness with Mr. Shepherd concerning his purposes respecting the farm. The objection sustained by the court was to the subject-matter of the testimony, and it was sustained because it was inadmissible for the defendant to introduce evidence to impeach his landlord's title. There can be no doubt the ruling was correct. For the same reason the ruling complained of in the third assignment was unobjectionable. Indeed, it is difficult to

---

* Civil Code of 1868, page 620.　　　† 12 Stat. at Large, 588.

perceive what possible bearing upon the case the letter of Mr. Shepherd to his daughter and grandsons could have. Certainly it contained nothing that tended in the slightest degree to support any defence the defendant was at liberty to set up.

Nor can we perceive that the record of the proceeding for a forcible detainer, commenced by the plaintiff in 1868, was pertinent in any degree to any matter in controversy in this case. It was, therefore, properly excluded. A judge well performs his duty when he guards the jury against having their attention diverted from the real issue by the introduction of immaterial evidence.

' The fifth assignment is, that the court erred in excluding what is called a transcript of a distress warrant issued by Chapline, agent for the plaintiff, against the defendant, and also in excluding the forthcoming bond. They were offered apparently to show that the notice to quit on the 1st of April, 1870, had been waived by the plaintiff, but they were rejected by the court because not properly certified. Whether the court erred in this or not is of no importance, for the fact that such a distress warrant was issued the defendant was allowed to prove by other evidence, and he had the full benefit of such proof. There was not a fact stated in the transcript which did not otherwise appear, and the facts were not controverted. The error of the court, therefore, if there was an error, was perfectly harmless, and it would not justify directing a new trial.

The remaining assignments which require any notice all relate to the charge. The first instruction asked by the defendant and refused by the court was, in substance, that the distress warrant sued out by Chapline, as agent of the plaintiff, for rent claimed to be due for the year ending April, 1871, levied as it was on the property of the defendant, who had given a forthcoming bond, and being still pending, constituted a waiver of the notice to quit, and, therefore, that the defendant was entitled to a verdict. The prayer overlooked the fact, of which there was evidence, that Chapline had no authority from the plaintiff to issue the distress war-

rant, and that his act had been disapproved by the plaintiff's attorney. The second prayer was, in effect, that no expression of disapprobation by the plaintiff or his attorney of the act of the agent in issuing the distress warrant could defeat its operation as a waiver of the notice to quit, while the proceedings on the warrant were pending, and so long as the plaintiff held the forthcoming bond for the property distrained. This prayer assumes as a fact that of which there was no evidence. It assumes that the plaintiff held the forthcoming bond. But it is very manifest that the defendant was not entitled to have either of these instructions asked for by him given to the jury. It is true the notice to quit might have been waived, and doubtless should have been regarded as waived by the distress warrant if it had been issued by the plaintiff, or by his authority. But waiver is always in part a question of intent, and there could have been no intent to waive if the act claimed to have been a waiver was either unknown to the plaintiff, or unauthorized by him, or not ratified by him. That the distress warrant was unauthorized, and, indeed, disavowed, is a fact of which there was evidence, and no attempt was made to show that it had ever been ratified. The defendant has, therefore, no reason to complain that his prayer for the instruction mentioned was refused. The court did charge that notice to quit was necessary to entitle the plaintiff to recover, and that if notice was given, and afterwards a distress warrant was sued out to recover rent due and in arrear for the leased premises, the presumption of law would be that it was sued out with the assent of the plaintiff, in which event he could not maintain the action unless the evidence satisfied the jury that the agent, Chapline, exceeded his authority in suing out such warrant, acting without the knowledge and consent of his principal. More than this the defendant had no right to ask.

The third and fourth instructions asked for were also properly denied. They were in keeping with the efforts made by the defendant throughout the trial to attack the title under which he had held as tenant. If not still retain-

ing possession under the first lease made to him, he was in under a subsequent lease made to his wife, which he himself had given in evidence. It was not open to him, therefore, to show that some other person had the legal title, or a better title than that of the landlord.

It would be sufficient to say of the seventh assignment of error that it has been made in entire disregard of the rules of this court. It avers simply that the court below erred in giving the instructions which were given to the jury, on its own motion (that is, in the general charge), in lieu of the instructions asked for by the parties, but in what the error consisted, or in what part of the charge it is contained, is not specified. That under the twenty-first rule this is an insufficient assignment is very plain. Were it, however, made as directed by our rule it could not be sustained. We have already said that, under the will of R. D. Shepherd, his daughter and two sons took the legal estate in the lands devised by him. We might have added that the sealed letter accompanying the will was not testamentary, and that it in no respect created any estate, legal or equitable, in any one.

It has been conceded in the argument, as it should have been, the court properly ruled that the letter of P. C. Brooks and Shepherd Brooks, executors, to the defendant's wife, dated November 29th, 1865, with her reply to it, and the subsequent modification agreed upon, constituted a lease of the premises to her. But it is denied that the lease enured to the benefit of her husband, and brought him into the relation of a tenant under the lessors, because, as it is claimed, it was a lease for her separate use. This claim, however, is without any foundation in the contract. There is no word that looks to the exclusion of the husband. No particular phraseology, it is true, is necessary for the creation of a separate estate for a feme covert, but there must be something to show an intent to create it, and nothing of the kind appears in this case. The court, therefore, correctly charged the jury, in the absence of any proof of dissent by the defendant, that the lease became his property, and that in force of it he became the tenant of the lessors.

That the lease created a tenancy from year to year is too plain to need argument.

There is nothing more in the record or in the assignments of error that requires notice. We fail to perceive anything of which the defendant below, now plaintiff in error, can justly complain, and the judgment is, therefore,

AFFIRMED.