**UNITED STATES of America**

v.

**Frank LEWIS, Appellant.**

**No. 22641.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 31, 1969.

Decided May 21, 1970.

Petition for Rehearing Denied June 18, 1970.

---

13. *Cf.* Fountain v. Filson, 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971, rehearing denied, 337 U.S. 921, 69 S.Ct. 1153, 93 L.Ed. 1730 (1949).

———◆———

Mr. John Guandolo, Washington, D. C. (appointed by this court) for appellant.

Mr. Gene R. Haislip, Special Asst. to the U. S. Atty., of the bar of the Supreme Court of Virginia, pro hac vice, by special leave of the court, with whom Messrs. Thomas A. Flannery, U. S. Atty., and Roger E. Zuckerman, Asst. U. S. Atty., were on the brief, for appellee. Messrs. David G. Bress, U. S. Atty., at the time the record was filed, and John A. Terry, Asst. U. S. Atty., also entered appearances for appellee.

Before WRIGHT, TAMM and ROBINSON, Circuit Judges.

PER CURIAM:

 A District Court jury found appellant, Frank Lewis, guilty of robbery[1] and assault with a dangerous weapon[2] in connection with the holdup of a delicatessen. By this appeal, he seeks a new trial on several grounds, only one of which requires extended discussion.[3] We find no error justifying reversal, and accordingly affirm appellant's conviction.

The holdup, a midnight affair, was staged by three men, one of whom was armed with a rifle and another with a sawed-off shotgun. At the trial, a witness identified appellant as one of the three,[4] and another witness related an overheard conversation between appellant and his codefendant concerning a planned robbery of the delicatessen.[5] The defense evidence was to the effect that appellant was in Philadelphia, Pennsylvania, on the critical date.

To rebut the claim of alibi, Annie Durham Lewis, appellant's wife at the time of the holdup,[6] was admitted, over

1. D.C.Code § 22–2901 (1967), since amended (Supp. III 1970).

2. D.C.Code § 22–502 (1967).

3. The interval between the offense date and the date of appellant's arrest is largely explained by the exigencies of the investigative and indictment processes, and by appellant's tenure in the Armed Forces during the greater portion of that period. The interval between appellant's arrest and trial was only about three and a half months. These circumstances negate the purposeful and oppressive delay that makes for due process and speedy trial violations. See, e. g., United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L. Ed.2d 627 (1966); Jackson v. United States, 122 U.S.App.D.C. 124, 351 F.2d 821 (1965); Smith v. United States, 118 U.S.App.D.C. 38, 41, 331 F.2d 784, 787 (1964).

The claim of lack of a preliminary hearing is answered by the fact that appellant was indicted prior to arrest. Clemons v. United States, 133 U.S.App.D.C. 27, 44 n. 19, 408 F.2d 1230, 1247 n. 19 (en banc 1968), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969); Walker v. Rogers, 128 U.S.App.D.C. 420, 389 F.2d 961 (1968); Crump v. Anderson, 122 U.S.App.D.C. 173, 352 F.2d 649 (1965). Since we discern no constitutional violation incidental to endeavors to obtain a pretrial photographic identification by the complainant, see Simmons v. United States, 390 U.S. 377, 382, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the accuracy of his in-trial identification of appellant was for the jury.

4. See note 3, *supra*.

5. It seems that only two persons—appellant and the codefendant—were ever charged with the holdup. The codefendant was never tried, and the indictment against him was ultimately dismissed, possibly because it was his wife who testified to the conversation related in text.

6. The record leaves appellant's true marital status at the time of trial in a state of confusion. It is uncontradicted that, approximately one month before the holdup of the delicatessen, appellant went through a marriage ceremony with the Mrs. Lewis who testified, though appellant said that this occurred "through false pretenses." It also appears that appellant engaged in a marriage ceremony with another less than four months after the first. The record supplies no information as to any dissolution of the first marriage, a possibility upon which the brief time interval would seem to seriously impinge. Counsel on both sides of this appeal have treated the first Mrs. Lewis

appellant's objection,[7] as a witness on behalf of the Government. Mrs. Lewis' testimony placed appellant at their apartment in the District of Columbia on the date in question, and described his departure therefrom, in the company of the codefendant, about two hours prior to the holdup. Mrs. Lewis also testified that appellant returned home about 3:00 or 3:30 on the morning following, and that he was then carrying a sawed-off shotgun.

■ Congress has modified the common law doctrine, previously obtaining in this jurisdiction, disqualifying a spouse as a witness in litigation to which the other is a party.[8] The relevant statute now provides that "[i]n civil and criminal proceedings, a husband or his wife is competent but not compellable to testify for or against the other."[9] The statute does not, however, extend testimonial competence to all events transpiring during the marital enterprise. "In civil and criminal proceedings," the statute continues, "a husband or his wife is not competent to testify as to any confidential communications made by one to the other during the marriage."[10] Read together, these provisions obviously mean that a willing spouse may testify, save as to confidential communications *inter se*, notwithstanding opposition by the marital copartner.[11] Thus Mrs. Lewis' testimony was properly received at appellant's trial if given voluntarily, and if confined within proper limits.

■ Appellant's argument that his wife's testimony was improperly received embraces two independent contentions. First, it said that the record is bare of any indication that Mrs. Lewis was afforded an opportunity to exercise her option not to testify against her husband.

---

as appellant's wife at the time of trial as well as at the time of the offenses charged. We do likewise because of the grave uncertainty surrounding the matter, and because in any event the problem on appeal would not disappear completely even if the situation were otherwise. See note 10, *infra*.

7. See notes 15, 28, *infra*, and accompanying text.

8. It was the general rule of the common law that neither husband nor wife was a competent witness either for or against the other in any case, civil or criminal. Hawkins v. United States, 358 U.S. 74, 75, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958); Hopkins v. Grimshaw, 165 U.S. 342, 349, 17 S.Ct. 401, 41 L.Ed. 739 (1897); Stickney v. Stickney, 131 U.S. 227, 236, 9 S.Ct. 677, 33 L.Ed. 136 (1899); Lucas v. Brooks, 85 U.S. 436, 452–453, 18 Wall. 436, 21 L.Ed. 779 (1873); Capital Traction Co. v. Lusby, 12 App.D.C. 295, 305 (1898); 2 J. Wigmore, Evidence §§ 600–604 (3d ed. 1940). There were exceptions, notably in litigation *inter se* and in prosecutions for injury to the other. Hopkins v. Grimshaw, *supra*, 165 U.S. at 349, 17 S.Ct. 41; Lucas v. Brooks, *supra*, 85 U.S. at 452; Capital Traction Co. v. Lusby, *supra*, 12 App.D.C.

at 305; 2 J. Wigmore, Evidence §§ 612–617 (3d ed. 1940). And see Halback v. Hill, 49 App.D.C. 127, 128–129, 261 F. 1007, 1008–1009 (1919). In Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933), the Supreme Court discarded the disqualification of a spouse to testify *for* the other, this decision did not affect the ban on testimony by one spouse *against* the other.

9. D.C.Code § 14–306(a) (1967).

10. D.C.Code § 14–306(b) (1967). This prohibition survives dissolution of the marriage. Hopkins v. Grimshaw, *supra* note 8, 165 U.S. at 351, 17 S.Ct. 41; Dobbins v. United States, 81 U.S.App.D.C. 218, 221, 157 F.2d 257, 260, cert. denied, 329 U.S. 734, 67 S.Ct. 99, 91 L.Ed. 634 (1946); McCartney v. Fletcher, 10 App.D.C. 572, 595–596 (1897).

11. Jackson v. United States, 119 U.S.App.D.C. 100, 105, 337 F.2d 136, 141 (1964), cert. denied, 380 U.S. 935, 85 S.Ct. 944, 13 L.Ed.2d 822 (1965); Postom v. United States, 116 U.S.App.D.C. 219, 220, 322 F.2d 432, 433 (1963), cert. denied, 376 U.S. 917, 84 S.Ct. 672, 11 L.Ed.2d 613 (1964); Commercial Credit Co. v. McReynolds, 63 App.D.C. 42, 43, 68 F.2d 990, 991 (1934).

To assure such an opportunity, we had occasion, in Postom v. United States,[12] to suggest that trial judges suitably advise the spouse-witness on that score,[13] and the fact is that the suggestion was not pursued here. Nonetheless, the record discloses that defense counsel [14] declined the trial judge's invitation to request an appropriate instruction to the witness, and instead simply "object[ed] to any testimony generally." [15] The record reveals, moreover, that the prosecuting attorney inquired of Mrs. Lewis as to whether she wished to testify in the case, and that she responded in the affirmative.[16] Undeniably, the safer course is to follow the *Postom* suggestion in all instances where the spouse-witness' knowledge of the testimonial alternatives is not crystal clear. We are advertent, however, to the consideration that the choice was for Mrs. Lewis to make, and we are not persuaded that under the circumstances here appellant's conviction should be reversed on the speculative theory that Mrs. Lewis, in stating that she was willing to testify, might not have meant what she said.

The second facet of appellant's argument focuses on Mrs. Lewis' testimony that she observed her husband's return to the apartment with a sawed-off shotgun about three hours after the robbery. Appellant equates these observations with a communication of the observed facts and on that basis urges that their admission into evidence was erroneous. For reasons now to be related, we decline the invitation.

The marital disqualification appellant now asserts is designed "to insure subjectively the unrestrained privacy of communication, free from any fear of compulsory disclosure." [17] In consequence, "[t]he protection * * * extends only to *communications*, not to acts which are in no way communications." [18] This is not to say that acts are never communicative; on the contrary, we recognize that there is considerable authority supporting the thesis that in particular contexts they can be.[19] But regardless of the character of the communication, "[t]he essence of the privilege [against disclosure] is to protect *confidences* only," [20] and to become

---

12. *Supra* note 11.

13. "Because of [Section 14–306(a)], we think that, outside the presence of the jury, the trial judge should tell one who is called to testify for or against his spouse that his testimony cannot be compelled but may be received if volunteered." 116 U.S.App.D.C. at 220, 322 F.2d at 434 (footnote omitted).

14. Not appellant's counsel on appeal.

15. In this connection, the record reads: [Defense Counsel]: Your Honor, before this witness is permitted to testify, I would like to voice an objection to her taking the witness stand. She is the wife of the defendant. * * *
The Court: I understand. What do you want me to tell this woman?
[Defense Counsel]: I was going to object to any testimony generally.
The Court: It is overruled. Proceed.

16. The following occurred on Mr. Lewis' direct examination:

Q. Do you have any relation with Frank Lewis?
A. Yes, I was married to him December 19, 1966.
Q. Where were you married to him?
A. Prince Georges County, Maryland.
Q. Do you recall by whom you were married?
A. Paul Scott.
Q. Now, do you wish to testify in this matter?
A. I do.

17. 8 J. Wigmore, Evidence § 2336 at 648 (McNaughton rev. 1961).

18. 8 J. Wigmore, Evidence § 2337 at 657 (McNaughton rev. 1961) (emphasis in original).

19. See the cases collected in Annot., 10 A.L.R.2d 1339 (1950). See also 8 J. Wigmore, Evidence § .2337 (McNaughton rev. 1961).

20. 8 J. Wigmore, Evidence § 2336 at 648 (McNaughton rev. 1961) (emphasis in original).

privileged the communication must in the first place be confidential.[21] The crucial questions posed at appellant's trial were whether the events Mrs. Lewis observed were both communicative and confidential,[22] and the record before us does not afford the means for definitive answers.

■ It has not been the rule in the federal courts that acts become confidential communications merely because during coverture they are performed by one spouse in the presence of the other.[23] Nor does it appear that the essential qualities of communication and confidentiality flow automatically from the fact that the act seen by the other spouse is one that connotes criminal conduct.[24] Some acts conceivably may so convey a message, and may so bespeak a trust, as to necessitate nothing more to demonstrate entitlement to the privilege.[25] We cannot, however, say that those to which Mrs. Lewis testified here fall readily within that category.

■ Responding to separate questions, Mrs. Lewis said simply that appellant came back to the apartment at 3:00 or 3:30 a. m., and that he then had a sawed-off shotgun. No further circumstance was inquired into, nor was any volunteered, that might serve to elucidate the situation. We do not know whether appellant's reentry into the apartment was open or clandestine; if the latter, the elements of communication and confidentiality are clearly lacking.[26] We do not know whether appellant was unaware of or indifferent to the observation of his wife; if either, we face the same insuperable difficulty.[27] In sum, a purpose to both communicate and confide in the wife is left totally obscure. This we attribute primarily to the fact that the items of testimony now challenged were not made the subjects of specific objection at trial.[28]

---

21. Dobbins v. United States, *supra* note 10, 81 U.S.App.D.C. at 221, 157 F.2d at 260; Sacks v. Sacks, 75 U.S.App.D.C. 165, 124 F.2d 527 (1942). And see Dickerson v. United States, 62 App.D.C. 191, 194, 65 F.2d 824, 827, cert. denied, 290 U.S. 665, 54 S.Ct. 89, 78 L.Ed. 575 (1933).

22. To resolve issues of this type, a preliminary examination of the spouse-witness, out of the presence of the jury, is wholly in order. Sacks v. Sacks, *supra* note 21.

23. See Pereira v. United States, 347 U.S. 1, 6, 74 S.Ct. 358, 98 L.Ed. 435 (1954); Cooper v. United States, 282 F.2d 527, 533 (9th Cir. 1960); United States v. Guiteau, 12 D.C. (1 Mackey) 498, 547, 10 F. 161 (1882).

24. *E. g.*, Hall v. Commonwealth, 309 Ky. 74, 215 S.W.2d 840, 841 (1948) (concealed weapon carried by husband); State v. Foster, 164 La. 813, 114 So. 696, 702–703 (1927) (husband's whereabouts and activities prior to offense); Hafer v. Lemon, 182 Okl. 578, 79 P.2d 216, 219 (1938) (pistol carried by husband); Howard v. State, 103 Tex.Crim.R. 205, 280 S.W. 586, 588 (1926) (blood on husband's shirt).

25. 8 J. Wigmore, Evidence § 2337 at 658 (McNaughton rev. 1961).

26. Whatever the fate of the principle for which appellant contends in different contexts, it is evident that it can have no application where the acting spouse attempts to conceal the acts in question from the other spouse. Smith v. State, 198 Ind. 156, 152 N.E. 803, 805 (1926). See also State v. Snyder, 84 Wash. 485, 147 P. 38, 39 (1915); 8 J. Wigmore, Evidence § 2337 at 660 (McNaughton rev. 1961). The two cases on which appellant principally relies are plainly distinguishable. In People v. Daghita, 299 N.Y. 194, 86 N.E.2d 172, 174, 10 A.L.R.2d 1385 (1949), the court pointed out that "[t]he record makes plain that defendant made no effort to conceal or disguise his conduct at his home from his wife." In Menefee v. Commonwealth, 189 Va. 900, 55 S.E.2d 9, 11–12 (1949), the court's recital of the spouse's acts made plain that a similar situation existed.

27. 8 J. Wigmore, Evidence § 2337 at 658 (McNaughton rev. 1961).

28. The contested testimonial items came in, responsively to specific questions, without

 Basic in our criminal procedure is the rule that an appropriate objection in the trial court is ordinarily necessary to preserve a question for review.[29] The general requirement is that he who would later complain on appeal must, "at the time the ruling or order of the court is made or sought, make[] known to the court the action which he desires the court to take or his objection to the action of the court and the grounds therefor."[30] We have pointed out, too, that the objection, "should be timely, specific, and renewed, when the court's initial ruling, correct when made, is proved erroneous in the light of subsequent evidence."[31] The rationale for these requirements[32] includes importantly the need for a record, developed by adversary processes, on which appellate considera-tion and resolution can safely proceed. It is evident that the opposition that was voiced at trial did not specifically present to the District Court the issue appellant now seeks to litigate here.[33]

 Our authority to deviate from the mandate referred to is limited to cases wherein there are "plain errors or defects affecting substantial rights."[34] We cannot say, from what is before us, that error is manifest here.[35] Nor can we undertake to explore on a barren record the conditions under which future spousal acts may soundly be held to achieve the status of confidential marital communications.

The judgment appealed from is

Affirmed.

---

objection whatsoever save that made earlier to any testimony at all by Mrs. Lewis. See note 15, *supra.* The only other opposition forthcoming during Mrs. Lewis' tenure on the witness stand came after her direct examination had been completed, when defense counsel sought to "renew" his previous objection. Compare Menefee v. Commonwealth, *supra* note 26, 55 S.E.2d at 12.

29. White v. United States, 114 U.S.App. D.C. 238, 240, 314 F.2d 243, 245 (1962); Williams v. United States, 113 U.S.App. D.C. 7, 9, 303 F.2d 772, 774, cert. denied, 369 U.S. 875, 82 S.Ct. 1145, 8 L.Ed.2d 277 (1962); Sims v. United States, 107 U.S.App.D.C. 294, 277 F.2d 93 (1960); Blackshear v. United States, 102 U.S. App.D.C. 289, 290, 252 F.2d 853, 854 (1958), cert. denied, 359 U.S. 1004, 79 S.Ct. 1144, 3 L.Ed.2d 1033 (1959); Lawson v. United States, 101 U.S.App.D.C. 332, 333, 248 F.2d 654, 655 (1957), cert. denied, 355 U.S. 963, 78 S.Ct. 552, 2 L.Ed.2d 537 (1958); O'Neal v. United States, 95 U.S.App.D.C. 386, 387, 222 F.2d 411, 412 (1955); Fisher v. United States, 92 U.S.App.D.C. 247, 248, 205 F.2d 702, 703, cert. denied, 346 U.S. 872, 74 S.Ct. 122, 98 L.Ed. 381 (1953); Beard v. United States, 65 App.D.C. 231, 236, 82 F.2d 837, 842, cert. denied, 298 U.S. 655, 56 S.Ct. 675, 80 L.Ed. 1382 (1936).

30. Fed.R.Crim.P. 51.

31. Skiskowski v. United States, 81 U.S. App.D.C. 274, 279, 158 F.2d 177, 182, cert. denied, 330 U.S. 822, 67 S.Ct. 769, 91 L.Ed. 1273 (1947).

32. See Miller v. Avirom, 127 U.S.App. D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967).

33. Compare On Lee v. United States, 343 U.S. 747, 750, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); Segal v. United States, 246 F.2d 814, 818 (8th Cir.), cert. denied, 355 U.S. 894, 78 S.Ct. 269, 2 L.Ed.2d 192 (1957).

34. Fed.R.Crim.P. 52(b).

35. Compare Williams v. United States, *supra* note 29, 114 U.S.App.D.C. at 9, 314 F.2d at 774; Ruffin v. United States, 106 U.S.App.D.C. 97, 98, 269 F.2d 544, 545, cert. denied, 361 U.S. 865, 80 S.Ct. 129, 4 L.Ed.2d 107 (1959); Blackshear v. United States, *supra* note 29, 102 U.S. App.D.C. at 290, 252 F.2d at 854; Perry v. United States, 102 U.S.App.D.C. 315, 316 n. 2, 253 F.2d 337, 338 n. 2 (1957).