# HOPKINS *v.* GRIMSHAW.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 18. Argued December 16, 17, 1895. — Decided February 15, 1897.

Notwithstanding the provisions of the acts of July 2, 1864, cc. 210, 222 (reënacted in Rev. Stat. § 858, and Rev. Stat. D. C. §§ 876, 877), a widow is incompetent to testify, in a suit which she is neither a party to, nor interested in, to a private conversation between her husband and herself in his lifetime; and a conversation between them in their own home, in the presence of no one but a young daughter, who does not appear to have taken any part in it, is a private conversation, within the rule.

The rule against perpetuities is inapplicable to a trust resulting to the heirs of a grantor upon the failure of an express trust declared in his deed.

By a deed of land from a private person to three others as trustees for a particular society, not incorporated, but formed for the mutual aid of its members when sick and for their burial when dead, to have and to hold to the trustees, " and their successors in office forever, for the sole use and benefit of the society aforesaid, for a burial ground, and for no other purpose whatever," the trustees take the legal estate in fee; and, when the land has ceased to be used for a burial ground, and all the bodies there interred have been removed to other cemeteries, by order of the municipal authorities, and the society has been dissolved and become extinct, the grantor's heirs are entitled to the land by way of resulting trust; and, after one of those heirs and the heirs of the trustees have conveyed their interests in the land to another person, the other heirs of the grantor may maintain a bill in equity against him to enforce the resulting trust, and for partition of the land, and for complete relief between the parties.

THIS was a bill in equity, filed May 24, 1889, against William H. Grimshaw, and against Mary J. Brooks, an heir of Stephney Forrest, by the other heirs of Forrest, and by " Homer S. Cummings, trustee," to enforce a resulting trust in, and to obtain partition of, land in the city of Washington, conveyed by Forrest to David Redden and others, trustees

for the Union Beneficial Society of the City of Washington, for a burial ground. The case was heard upon pleadings and proofs, and was in substance as follows:

By deed dated August 9, 1845, and recorded October 21, 1845, William Nolan, Commissioner of Public Buildings, in consideration of the sum of $129.93, recited to be paid by the grantee, conveyed to " Stephney Forrest, his heirs and assigns forever," ten lots comprising the north half of square 1089 in the city of Washington.

By deed not dated, but acknowledged September 25, 1845, and recorded October 21, 1845, Stephney Forrest, for a like consideration, conveyed the same land to " David Redden, Daniel Simms and William Barton, trustees for the Union Beneficial Society of Washington City," to have and to hold to said Redden, Simms and Barton " and their successors in office forever, for the sole use and benefit of the Union Beneficial Society of the City of Washington as aforesaid, for a burial ground, and for no other purpose whatever."

Stephney Forrest died in 1855, having been twice married, and leaving six children by his first wife, and one daughter (since Mary J. Brooks) by his second wife, Rachel Forrest, who also survived him. He was a member of the society; and the answer alleged that he purchased the land in behalf of the society and with its money.

The only evidence offered in support of this allegation consisted of depositions of Rachel Forrest, his widow, and of Mary J. Brooks, their daughter, taken in November, 1889, the material parts of which were as follows: Mrs. Forrest testified that she was now eighty-five years old; that she knew her husband bought this land for the society, because, before he left home on the morning of the day of his purchase, he told her that he was going to buy the land for the society, and to get the money from the society to buy it, and came back and showed her a bundle which he said contained the money, and later in the day told her that he had bought the land for the society; and that she never talked with her daughter about this, or mentioned it to any one until the day she testified in this case. Mrs. Brooks testified that, when she was thir-

teen or fourteen years old, she heard her father, as he left
home one morning, say that he was going to the secretary
of the society to get the money to buy the land for the
society.  The plaintiffs' counsel, at the hearing, objected to
this testimony of Forrest's widow and daughter as insufficient
to establish a trust; and to the widow's testimony as incom-
petent to prove statements made by her husband to her.

The Union Beneficial Society of the City of Washington
was an unincorporated association of colored persons, formed
by articles of association in writing in 1841, by which pro-
visions were made for visiting sick and infirm members,
and for applying to their relief money appropriated for that
purpose; and for paying, upon the death of any member,
certain sums out of the funds of the society "towards defray-
ing the funeral expenses," and " to the widow, orphan children
or legal representatives, of such deceased member "; the funds
of the society were to be derived from entrance fees, monthly
dues and other pecuniary contributions of the members, and
fines imposed upon them for violations of the articles; and
" whilst six members of this institution unite for its continu-
ance, it shall not be broken."

For many years after the deed of Forrest to the trustees,
the land was used by the society for the burial of its members,
and also for the burial of any other colored inhabitants of the
city upon the payment of certain fees.  Since 1852, at least,
fees so obtained, instead of being applied to the use of the
society, were divided from time to time among its members.
The last admission of a new member was in 1870, and the mem-
bers gradually dwindled in number until 1882, when there were
only three members, one being Philip Wells, its president.
For the five years before 1883, there were 1589 interments;
and from January, 1883, to November 13, 1883, there were
560 bodies interred, many of them one upon another.  On
November 13, 1883, further interments were prohibited by
the board of health ; and none were made afterwards.  It did
not appear that since 1887 the society did anything, kept any
records, or held any meetings.

All the trustees named as grantees in the deed from Steph-

ney Forrest being dead, the defendant Grimshaw, who was a son in law of Mrs. Brooks, obtained in 1887 and 1888 conveyances to himself, as follows: 1st. Deeds from Mrs. Forrest and Mrs. Brooks of their interests in the land. 2d. 'A deed from Philip Wells, the president of the society, purporting to convey all its and his interests in the land. 3d. Deeds of the land from the heirs of the trustees aforesaid.

In February, 1889, the board of health, upon the petition of Grimshaw, claiming to have authority from the surviving members of the society, ordered him to exhume all the bodies interred in this burial ground, and to remove them to other cemeteries; and he did so at his own expense, amounting, as he testified, to the sum of $2000.

The bill alleged that the plaintiffs and the defendants sued and were sued in their own right, except Cummings, who sued as trustee under the trust afterwards mentioned; and that on March 20 and 27, 1889, the land in question was conveyed to him by the other plaintiffs, by deeds which (as put in evidence at the hearing) purported to convey that land to Cummings in fee, " in and upon the trusts, nevertheless, hereinafter mentioned and declared, that is to say, in trust to sell and convey the same to such person or persons, in fee simple or otherwise, and upon such terms and conditions, as Franklin H. Mackey, of the District of Columbia, shall in writing direct, and the proceeds of said sale to distribute according to the terms of a paper of even date herewith, and signed in duplicate by the party of the first part, one copy of which is in the hands of the said Cummings, and the other in the hands of the said Mackey ; and the purchaser or purchasers of said property shall not be required to see to the application of the purchase money." The paper so referred to, concerning the distribution of proceeds of sales, was not in the record transmitted to this court.

The bill further alleged that, " by virtue of said deeds, complainant Cummings now holds the entire legal title in trust for the other co-plaintiffs to said property, except the interest of the defendant William H. Grimshaw ; and that a complete and perfect title to the same will be held by the complainants when this court has decreed the reverter which complainants

are entitled to have declared by reason of the terms of the said original deed from Stephney Forrest to said trustees."

The bill prayed that the land " be decreed to have reverted to the heirs of Stephney Forrest, by reason of the terms and provisions and purposes of the original conveyance of said Stephney Forrest, and the order of the municipal authorities, and the carrying out of said order"; that a commission be appointed to make partition of the land between Grimshaw as grantee of Mrs. Brooks, one of the heirs of Stephney Forrest, and the plaintiffs, his other heirs; that the deeds to Grimshaw from the heirs of the trustees be declared to be a cloud upon the plaintiffs' title, and of no effect to pass any title in the land, and be directed to be surrendered for cancellation; and for further relief.

Grimshaw, in his answer to the bill, denied that Cummings sued as trustee, and alleged that he sued in his own right and for his own benefit; and at the hearing, in support of this allegation, introduced a bill in equity, filed by Cummings alone April 16, 1889, similar to the present bill, except in alleging that by the deeds to him from F rrest's heirs the entire and full beneficial interest and estate vested in him. That bill was dismissed by Mr. Mackey, as solicitor for Cummings, on the same day on which he filed the present bill as solicitor for the plaintiffs therein.

The answer further averred that the deeds to Grimshaw from the heirs of the original trustees were procured by him at the instance and for the benefit of the Union Beneficial Society, and he held the land in trust for the society, and for no other use or purpose whatsoever; and denied that those deeds were clouds upon the plaintiffs' title; denied the plaintiffs' title; and denied that any title vested in Stephney Forrest's heirs, by reverter or otherwise; and averred that the deed from Forrest vested in the trustees named therein an absolute and indefeasible estate in fee simple; and that the society used the land solely for the purpose of a burial ground as long as it was lawful so to use it, and only ceased such use when compelled to do so by law. To this answer the plaintiffs filed a general replication.

Mrs. Brooks never filed an answer; and the plaintiffs, before the hearing, dismissed their bill as against her.

Upon the hearing, the Supreme Court of the District of Columbia dismissed the bill, "without prejudice to the rights of the complainants to claim, in any proper suit or proceeding, such right, if any, as the said Stephney Forrest may have been entitled to, in said real estate, as a member of said Union Beneficial Society." The plaintiffs appealed to this court.

*Mr. Franklin H. Mackey* and *Mr. H. O. Claughton* for appellants.

*Mr. W. L. Cole* and *Mr. T. J. Darlington* for appellee.

Mr. Justice Gray, after stating the case, delivered the opinion of the court.

Stephney Forrest, in 1845, purchased a parcel of land in Washington, and conveyed it to three persons, "trustees for the Union Beneficial Society of Washington City," *habendum* to them "and their successors in office forever, for the sole use and benefit of the Union Beneficial Society of the City of Washington as aforesaid, for a burial ground, and for no other purpose whatever." Forrest died in 1855; and all three trustees afterwards died.

The Union Beneficial Society was an unincorporated association for the mutual aid of its members in case of sickness, and for their burial in case of death. This land was used by the society for a burial ground for nearly forty years, and then, by order of the board of health, ceased to be so used; and all the bodies which had been buried there were exhumed and removed to other cemeteries. Grimshaw afterwards procured conveyances of the land to himself from the heirs of the trustees named in Forrest's deed, as well as from Forrest's widow and from Mrs. Brooks, one of his heirs, and from Wells, the last president of the society and one of its three surviving members. And the society (which, by the terms of its articles of association, was to continue so long as it had six members)

·does not appear to have since done any acts, held any meetings or kept any records, and was practically dissolved and ·extinct.

The present bill was filed by the other heirs of Forrest :against Grimshaw and Mrs. Brooks, praying for a decree that the land had reverted to Forrest's heirs; and for a partition ·of the land between the plaintiffs and Grimshaw as grantee of Mrs. Brooks; and for cancellation of the deeds from the heirs of the trustees to Grimshaw, as being a cloud upon the plaintiffs' title; and for general relief.

The original joinder of Mrs. Brooks as a defendant is unimportant. By reason of having conveyed her right to Grimshaw, she had no interest in the suit, and filed no answer; and the plaintiffs, before the hearing, dismissed their bill as .against her.

Nor can the joinder of "Horace Cummings, trustee," as a plaintiff in this bill, affect the rights of the principal parties ·to the suit. The deeds made to him by the other plaintiffs, ·two months before this suit was brought, and produced at the hearing, showed that the land was conveyed by them to Cummings in trust to sell and convey it to such persons and upon such terms and conditions as their solicitor should direct, and to distribute the proceeds of such sale according to the terms of a paper, copies of which were in the hands of the solicitor and of Cummings respectively. Although that paper is not in the record, the terms of those deeds clearly show Cummings to have been a mere trustee to bring suit and to sell the land for the benefit of the other plaintiffs, and not in his own behalf, notwithstanding the allegation, in the bill thereafter filed by him alone, and voluntarily dismissed upon the filing of the present bill, that by those deeds the whole beneficial interest and estate vested in him. Perhaps, as suggested by the counsel of the appellee, the former bill was dismissed for fear of the rule of law, recognized in *Schulenberg* v. *Harriman,* 21 Wall. 44, 63, that a right of entry for breach of a condition subsequent cannot be alienated.

The allegation in the answer, that Forrest purchased this land in behalf of the society, and with its money, is supported

by no competent and sufficient evidence. The only evidence upon this point was the testimony, taken forty years after the transaction, of Forrest's widow and daughter, respectively the grandmother and the mother of Grimshaw's wife.

The first question presented in relation to this testimony is whether the widow was a competent witness to prove admissions or declarations supposed to have been made by her husband in conversation with her.

At common law, upon grounds of public policy, husband and wife (with some exceptions not here material) were not permitted, even by consent, to give evidence for or against each other, or to testify, even after the ending of the marriage relation by death or divorce, to private communications which took place between them while it lasted. *Stein v. Bowman*, 13 Pet. 209, 222; *O'Connor v. Majoribanks*, 4 Man. & Gr. 435; *S. C.*, 5 Scott N. R. 394; 1 Greenleaf on Evidence, §§ 334–337.

The Congress of the United States, by a clause originally inserted in the Civil Appropriation Act of July 2, 1864, c. 210, § 3, 13 Stat. 351, and embodied in section 858 of the Revised Statutes of the United States, has enacted that there shall be no exclusion of any witness in a civil action because he is a party to or interested in the issue tried. But that clause has merely removed all disqualifications of witnesses for interest, and does not affect the exclusion of testimony of a husband or wife upon grounds of public policy. *Lucas v. Brooks*, 18 Wall. 436, 453; *Bassett v. United States*, 137 U. S. 496, 505.

Congress, on the same day, passed another act, entitled "An act relating to the law of evidence in the District of Columbia," by which it was enacted "that on the trial of any issue joined, or of any matter or question, or on any inquiry arising in any suit, action or other proceeding in any court of justice, in the District of Columbia, or before any person having by law, or by consent of parties, authority to hear, receive and examine evidence, within said District, the parties thereto, and the persons in whose behalf any such action or other proceeding may be brought or defended, and any and all persons in-

terested in the same, shall, except as hereinafter excepted, be competent and compellable to give evidence, either *viva voce* or by deposition, according to the practice of the court, on behalf of either or any of the parties to said action or other proceeding: Provided, that nothing herein contained shall render any person who is charged with any offence, in any criminal proceeding, competent or compellable to give evidence for or against himself or herself; or shall render any person compellable to answer any question tending to criminate himself or herself; or shall, in any criminal proceeding, render any husband competent or compellable to give evidence for or against his wife, or any wife competent or compellable to give evidence for or against her husband, or in any proceeding instituted in consequence of adultery; nor shall any husband be compellable to disclose any communication made to him by his wife during the marriage, nor shall any wife be compellable to disclose any communication made to her by her husband during the marriage." Act of July 2, 1864, c. 222; 13 Stat. 374.

This act (except in the restriction to the District of Columbia) was taken, almost word for word, from modern English statutes; the first half of it (except the words "and any and all persons interested in the same," who had been made competent witnesses by the statute of 6 & 7 Vict. c. 85) from section 2 of the statute of 14 & 15 Vict. c. 99; the first two clauses of the proviso from section 3 of that statute; and the last two clauses, being those concerning husband and wife, from the statute of 16 & 17 Vict. c. 83, § 3.

The same act has been reënacted in the Revised Statutes of the District of Columbia, with hardly any change, except in substituting for the words "except as hereinafter excepted," the words "except as provided in the following section"; and in making the proviso a separate section, omitting the words, "Provided that nothing herein contained," and beginning with the words, "Nothing in the preceding section." Rev. Stat. D. C. §§ 876, 877.

The latter part, which constituted the proviso in the act of 1864, c. 222, and which now forms section 877 of the Revised

Statutes of the District of Columbia, is upon its face, and according to its uniform construction in the courts of the District of Columbia, not new and affirmative legislation, but wholly negative, and by way of proviso or exception out of the enactment which goes before; and therefore has no application to any cases other than those in which the husband or wife, called as a witness, is a party, in name or in fact, to the suit, or interested in it; and does not make a husband or wife, not a party to or interested in the suit, competent to testify, before or after the death of the other, to private communications between the latter and the witness. *United States* v. *Guiteau*, 1 Mackey, 498, 547, 548; *Clark* v. *Krause*, 2 Mackey, 559, 572; *Holtzman* v. *Wagner*, 5 Mackey, 15, 16; *Beale* v. *Brown*, 6 Mackey, 574, 577. See also *Barbat* v. *Allen*, 7 Exch. 609; *Percival* v. *Caney*, 14 Jurist, 1056, 1062; *S. C.*, cited 7 Exch. 611; *Alcock* v. *Alcock*, 5 De G. & Sm. 671; *The Queen* v. *Payne*, L. R. 1 C. C. 349, 355; *The Queen* v. *Thompson*, L. R. 1 C. C. 377.

Stephney Forrest's widow was neither a party to nor interested in this suit, having conveyed all her interest in the subject thereof to the defendant Grimshaw before the suit was brought. She was therefore incompetent to testify to private conversations between her and her husband in his lifetime; and a conversation between them in their own home, in the presence of no one but their young daughter, who does not appear to have taken any part in it, must be deemed to be a private conversation, within the rule. *Jacobs* v. *Hesler*, 113 Mass. 157.

The daughter herself may have been a competent witness to such a conversation. But her testimony, which amounted to no more than that she heard her father, as he left home one morning, say that he was going to the secretary of the society to get money to buy land for the society, was clearly insufficient to prove that he bought the land with money of the society, or that the society had any greater or other title, legal or equitable, than appeared to be conveyed to it by the deed made by him to, and accepted by, the trustees in its behalf. Such slight testimony to a casual remark of the

supposed trustee, more than forty years ago, falls far short of the clear proof required by a court of equity, whenever a trust in real estate is sought to be implied, against the terms of a deed of conveyance, by parol evidence of payment of the price by a third person. *Prevost* v. *Gratz*, 6 Wheat. 481; *Slocum* v. *Marshall*, 2 Wash. C. C. 397; *Smith* v. *Burnham*, 3 Sumner, 435.

We are then brought to the principal question in the case, which is of the nature and effect of the deed from Forrest to trustees for the Union Beneficial Society for a burial ground.

The first inquiry which naturally arises is whether the deed was for a charitable use, in the legal sense. If it was, the conveyance would not be open to any legal objection by reason of the length of time during which the trust might last, or because of the society named not being a corporation. *Ould* v. *Washington Hospital*, 95 U. S. 303; *Russell* v. *Allen*, 107 U. S. 163, 171. And the trustees, although the deed did not in terms run to their heirs and assigns, would take the legal estate in fee. *Russell* v. *Allen*, above cited; *Potter* v. *Couch*, 141 U. S. 296, 309; *Easterbrooks* v. *Tillinghast*, 5 Gray, 17, 21.

A grant for the maintenance of a churchyard or burial ground in connection with a church or religious society, or of a public burial ground, or a burial ground of all persons of a certain race, class or neighborhood, might be considered as in the nature of a dedication for a pious and charitable use. *Beatty* v. *Kurtz*, 2 Pet. 566, 583, 584; *Cincinnati* v. *White*, 6 Pet. 431, 436; *Jones* v. *Habersham*, 3 Woods, 443, 470, and 107 U. S. 174, 183, 184; *Dexter* v. *Gardner*, 7 Allen, 243, 247; *In re Vaughan*, 33 Ch. D. 187.

By the act of Congress of May 5, 1870, c. 80, § 5, reënacted in the Revised Statutes of the District of Columbia, provision has been made for the voluntary incorporation of cemetery associations in the District of Columbia; and "any person or persons desiring to dedicate any lot of land, not exceeding five acres, as a burial ground or place for the interment for the dead, for the use of any society, association or neighborhood," may convey such land by deed to the District of Columbia, "speci-

fying in such deed the society, association or neighborhood for the use of which the dedication is desired to be made, and thereby vest the title to such land in perpetuity for the uses stated in the deed." 16 Stat. 106, 107; Rev. Stat. D. C. §§ 594–604.

But the conveyance now in question, made to private persons as trustees, twenty-five years before the passage of that act, was expressed to be "for the sole use and benefit of the Union Beneficial Society of the City of Washington as aforesaid, for a burial ground, and for no other purpose whatever." The articles of association of that society appear to have contemplated the burial of none but its own members; and the usage, which early sprang up, of permitting the interment in its burial ground of other inhabitants of the District of Columbia, upon the payment of certain fees, appears to have been adopted, not from any charitable motive, but as a source of private profit to the members of the association. It may be doubted whether, in the absence of express statute, the burial ground of such a society can be held to be a public charitable use. See *King* v. *Parker*, 9 Cush. 74; *Donnelly* v. *Boston Catholic Cemetery*, 146 Mass. 163; *Anon.*, 3 Atk. 277; *Pease* v. *Pattinson*, 32 Ch. D. 154; *Cunnack* v. *Edwards*, (1896) 2 Ch. 679; *In re Buck*, (1896) 2 Ch. 727.

If it be assumed, however, as most favorable to the defendant, that this deed created a charitable trust, it was not a grant indicating a general charitable purpose and pointing out the mode of carrying that purpose into effect, thus coming within the class of cases in which courts of chancery, when the particular mode had failed, have carried out the general purpose. *Mormon Church* v. *United States*, 136 U. S. 1, 51–60; *Jackson* v. *Phillips*, 14 Allen, 539. But the trust was restricted, in plain and unequivocal terms, to the particular society to be benefited, as well as to the purpose of a burial ground, adding (as if to put the matter beyond doubt) "and for no other purpose whatever." The trust would end, therefore, at the latest, when the land ceased to be used as a burial ground and the society was dissolved. *Easterbrooks* v. *Tillinghast*, above cited; *Reed* v. *Stouffer*, 56 Maryland, 236, 254; *Second Universalist*

*Society* v. *Dugan,* 65 Maryland, 460; *In re. Rymer,* (1895) 1 Ch. 19, 31, 32.

In *Easterbrooks* v. *Tillinghast,* above cited, an inhabitant of a town devised land to a trustee named, and his successors to be appointed as provided in the will, in trust to apply the income in support of the gospel and maintenance of a pastor or elder in a church already existing in the town, of a certain faith and practice, so long as the members of that church "or their successors shall maintain the visibility of a church in said faith and order, and uniting in fellowship and communion with those who hold and practise said principles, and no others." Three years after the testator's death, the members of the church, reduced to two in number, voted and resolved, at a meeting called by public notice, that they would no longer endeavor to maintain the appearance of a visible church, and declared the church dissolved and extinct. The Supreme Judicial Court of Massachusetts, speaking by Mr. Justice Metcalf, decided that the trustee took an estate in fee; but that, the church having been dissolved, and having ceased to be a visible church, he held the land for the devisor's heirs at law as a resulting trust. 5 Gray, 21.

In *Rawson* v. *Uxbridge,* 7 Allen, 125, cited by the defendant, the deed was to a town of land already, as the deed recited, "being improved for a burying place," *habendum* "to the said town of Uxbridge forever, to their only proper use, benefit and behoof, for a burying place forever." There were no such negative words, as in the deed-now before us, "and for no other purpose whatever"; the action was at law; and the only question argued or considered was whether the deed created an estate upon condition subsequent. While deciding that it did not, Chief Justice Bigelow said: "If it be asked whether the law will give any force to the words in a deed, which declare that the grant is made for a specific purpose, or to accomplish a particular object, the answer is, that they may, if properly expressed, create a confidence or trust, or amount to a covenant or agreement on the part of the grantee." 7 Allen, 130.

The somewhat similar cases of *Crane* v. *Hyde Park,* 135

Mass. 147, and *Mahoning County* v. *Young*, 16 U. S. App. 253, also cited by the defendant, likewise turned upon a question of forfeiture for breach of a condition subsequent in a deed to a municipal corporation.

In the case at bar, the trust created by the deed having been terminated, according to its express provisions, by the land ceasing to be used as a burial ground, and the dissolution and extinction of the society for whose benefit the grant was made, there arises, by a familiar principle of equity jurisprudence, a resulting trust to the grantor and his heirs, whether his conveyance was by way of gift, or for valuable consideration. 2 Fonblanque Eq. 116, 133, and notes; 2 Story Eq. Jur. §§ 1199, 1200; Hill on Trustees, 113, 133; *Easterbrooks* v. *Tillinghast*, and *Reed* v. *Stouffer*, above cited.

The question suggests itself whether the case at bar falls within the rule of law, known as the rule against perpetuities, by which an estate, legal or equitable, granted or devised by one person to another, which, by the terms of the instrument creating it, is not to vest until the happening of a contingency which may by possibility not occur within the period of a life or lives in being (treating a child in its mother's womb as in being) and twenty-one years afterwards, is void for remoteness, and consequently a limitation over to a third person which may possibly not take effect within the period is void, and the estate remains in the first taker. That rule does not apply to a gift to a charity, with no intervening gift to or for the benefit of a private person or corporation; or to a contingent limitation over from one charity to another. But it does apply to a grant or devise to a charity after one to a private person; as well as to a grant or devise to a private person, although limited over after an immediate gift to a charity. *Russell* v. *Allen*, 107 U. S. 163, 171; *Jones* v. *Habersham*, 107 U. S. 174, 185; *McArthur* v. *Scott*, 113 U. S. 340, 381, 382; *Brattle Square Church* v. *Grant*, 3 Gray, 142; *Theological Education Society* v. *Attorney General*, 135 Mass. 285; *In re Tyler*, (1891) 3 Ch. 252; *In re Bowen*, (1893) 2 Ch. 491.

But when there is no limitation over in the grant or devise, and the grantor or devisor, or the heirs of either, claim the

estate, not under the grant or devise, but because, by reason of the failure thereof, the estate, legal or equitable, as the case may be, reverts or results to him or them, the rule against perpetuities is inapplicable.

Even when the first gift is strictly upon condition subsequent, requiring an entry on the part of the grantor or devisor, or his heirs, to revest the estate in him or them, the American courts have treated their title as unaffected by the rule against perpetuities. *Cowell* v. *Springs Co.*, 100 U. S. 55; *Gray* v. *Blanchard*, 8 Pick. 283; *Austin* v. *Cambridgeport Parish*, 21 Pick. 215; *Guild* v. *Richards*, 16 Gray, 309; *Tobey* v. *Moore*, 130 Mass. 448; Gray on Perpetuities, §§ 304–310.

But the deed in this case is clearly, in terms and effect, a conveyance in trust, with no words apt to create a condition. *Stanley* v. *Colt*, 5 Wall. 119; *Barker* v. *Barrows*, 138 Mass. 578; *Attorney General* v. *Wax Chandlers' Co.*, L. R. 6 H. L. 1. In such a case, it has been held, both in this country and in England, that, upon the failure of the trust declared in the deed, although depending upon a contingency which might not happen within the period prescribed by the rule against perpetuities, the resulting trust to the grantor and his heirs is not invalidated by the rule. *Easterbrooks* v. *Tillinghast*, above cited; *Stone* v. *Framingham*, 109 Mass. 303; *First Universalist Society* v. *Boland*, 155 Mass. 171; *In re Randell*, 38 Ch. D. 213, 218, 219; *In re Bowen*, (1893) 2 Ch. 491, 494. In *Randell's case*, Mr. Justice North said: "In my opinion, a direction that in a particular event a fund shall go in the way in which the law would make it go in the absence of such a direction, cannot be said to be an invalid gift, or contrary to the policy of the law." And in *Bowen's case*, Mr. Justice Sterling said: "As property may be given to a charity in perpetuity, it may be given for any shorter period, however long; and the interest undisposed of, even if it cannot be the subject of a direct executory gift, may be left to devolve as the law prescribes."

In the case at bar, our conclusions as to the effect of Forrest's deed, assuming it to be in the nature of a valid dedication for a pious and charitable use, may be summed

up as follows: The trustees named in the deed took the legal estate in fee. The equitable estate in fee was from the beginning, and always remained, in the grantor and his heirs. The trust declared in the deed, for a burial ground for the Union Beneficial Society, came to an end, according to its own express restriction and limitation, by the land ceasing to be used as a burial ground, and the dissolution of the society. Thereupon, the trustees held the legal estate in fee, subject to a resulting trust to the grantor's heirs, unaffected by the rule against perpetuities; and the legal estate of the trustees descended to their heirs, and passed by the deeds of the latter to the defendant, charged with this resulting trust.

The alternative that the trust expressed in Forrest's deed was not a charitable use, but was void as tending to create a perpetuity, and that the trustees, immediately upon the execution and delivery of the deed to them, held the land subject to a resulting trust for the grantor and his heirs, would be wholly inconsistent with the position always taken by the defendant Grimshaw, and by the trustees and the society under whom he claims title, and could not, therefore, enure to his benefit by way of defence to this suit, on the ground of laches, or otherwise. All Forrest's heirs (except Mrs. Brooks, who had conveyed her title to the defendant Grimshaw) have joined as plaintiffs in this bill to enforce the resulting trust in their favor. Both they and Grimshaw had acted upon the theory that the deed of Forrest created a valid trust for the Union Beneficial Society. The plaintiffs made no claim to the land, so long as it was used by that society for a burial ground. And neither the trustees, nor Grimshaw claiming under them, contended that they took an absolute title, free from the trust expressed in Forrest's deed. The real controversy between the plaintiffs and Grimshaw was as to the construction of the deed, and as to the duration of the express trust therein declared for the Union Beneficial Society.

The objection that the plaintiffs' only remedy is at law is unavailing. The bill, besides specifically praying that the land be decreed to have reverted to Forrest's heirs, and that

a partition be ordered to be made between the defendant Grimshaw, as grantee of Mrs. Brooks, one of Forrest's heirs, and the plaintiffs, his other heirs, and that the deeds to Grim-- shaw from the heirs of the trustees be declared to be a cloud upon the plaintiffs' title, contains a prayer for general relief; under which the court may grant any relief justified by the facts stated in the bill and appearing in proof. *Jones* v. *Van Doren*, 130 U. S. 684, 692.

Upon the allegations of the bill, and the proofs at the hearing, the trustees named in Forrest's deed, and their heirs, and Grimshaw as grantee of the latter, took the legal title in fee, in any aspect of the case, subject to a resulting trust for the heirs of the grantor. A resulting trust is a creature of equity, and can be enforced in a court of chancery only. *Wilkins* v. *Holman*, 16 Pet. 25, 59. Moreover, the title of the plaintiffs appearing upon the allegations and proofs to be purely equitable, the bill may also be maintained for partition of the land. Act of August 15, 1876, c. 297, 19 Stat. 202; *Willard* v. *Willard*, 145 U. S. 116; *Lucas* v. *King*, 2 Stockton, (10 N. J. Eq.) 277.

The court, having acquired jurisdiction of the bill upon both these grounds, was authorized to retain it for the purpose of administering complete relief between the parties, including the question of any allowance to which Grimshaw might be entitled for the expense incurred in the removal of the bodies from the burial ground to other cemeteries, or upon any other account.

The decree below appears to have proceeded upon the misapprehension that the heirs of Forrest were not entitled to any relief, unless by reason of his membership in the Union Beneficial Society.

*Decree reversed, and case remanded for further proceedings in conformity with this opinion.*