Mr. Chief Justice Alvey
delivered the opinion of the Court:
This case has been long pending, and has been the subject of a very protracted and expensive litigation. The main question involved, that of title to the property in controversy, was finally decided on appeal, by the Supreme Court of the United States, in 1896, in the case of Hopkins v. Grimshaw, reported in 165 U. S. 342. The questions presented on the present appeal are those that have arisen on the proceedings that have taken place on the reversal of the decree of the Supreme Court of the District of Columbia, in carrying out the mandate of the Supreme Court of the United States.
Without recapitulating the history and the facts of the litigation, which are very fully and clearly stated in the report of the case in 165 U. S. 342, it will suffice for all the purposes of this appeal, that we simply state how the litigation originated, and what was involved in it, and what has been finally and definitely decided, as the basis of the respective contentions of the parties on this appeal.
The bill in the case was filed May 24, 1889, against William H. Grimshaw and Mary J. Brooks (as against the latter the bill was subsequently dismissed), by certain heirs at law of Stephney Forrest, deceased, and by Horace S. Cummings, trustee, claiming a reversion in, and to obtain partition of, certain land in the city of Washington, which had been conveyed by Forrest to David Reddin and others, trustees, for the Union Beneficial Society of the city of Washington, an unincorporated association of colored people, for a burial ground. The deed to the trustees conveyed the land to them, and their successors, as such trustees for the Union Beneficial Society of Washington City, to have and to hold to them, and their successors in office, forever, for the sole use and benefit of the said society, “for a burial ground *6 and for no other purpose lohatever.” The lots embraced by the deed to the trustees named constituted the north part of the square, the southern portion being contemporaneously purchased and conveyed to trustees for the use of a colored female society, for cemetery purposes. It is only with the north half of the square that this suit is concerned. For many years after the deed from Forrest to the trustees the ground was used by the society for the burial of its members and also for the burial of any other colored inhabitants of the city, upon the payment of certain fees. The ground becoming filled with bodies to great excess, the board of health of the city, in November, 1883, forbid any further or. other interments of bodies in the lots embraced in the deed to the trustees, and no interments were made therein afterwards. During the months of February and March, 1889, all the bodies interred in those lots conveyed to the trustees were exhumed and removed to another cemetery, in accordance with an order of municipal authority, leaving the ground unused and vacant. The removal of the bodies and the reinterment thereof were done by the defendant Grimshaw, who claimed to have authority from the surviving members of the society; and the work was done at bis own expense, amounting, according to his own testimony as first given, to the sum of $2,000, though by subsequent evidence, he made the claim considerably more.
The bill was filed shortly after all the bodies had been removed; and by the bill the claim was made that, in consequence of the disuse and vacation of the ground for cemetery purposes, the right and title thereto had reverted to the heirs of Stephney Forrest, and that, of those heirs, the complainants represented five-sixths parts or interests, and the defendant Grimshaw one-sixth part; that the title to the property had reverted by reason of the disuser, but that it was clouded by reason of certain deeds that had been procured from the heirs of the deceased trustees to the defendant Grimshaw. The bill prayed that the cloud might be *7 removed and the ground partitioned among those entitled, according to their interests.
Grimshaw, by his answer to the bill, -averred that the deeds made to him by the heirs of the original trustees were procured by him at the instance and for the benefit of the Union Beneficial Society, and that he held the land in trust for the society, and for no other use or purpose whatsoever; and denied that those deeds were clouds upon the plaintiff’s title; he denied the plaintiff’s title, and denied that any title vested in the heirs of Stephney Forrest, by reverter or otherwise; and he averred that the deed from Forrest vested in the trustees named therein an absolute and indefeasible estate in fee simple; and that the society used the land solely for the purpose of a burial ground as long as it was lawful so to use it, and only ceased such use when compelled to do so by law. To the answer a general replication was entered.
Upon proof taken the case was brought to hearing, and the Supreme Court of the District dismissed the bill; and from the order dismissing the bill, the plaintiffs appealed to the'Supreme Court of the United States. On that appeal the order of the Supreme Court of the District was reversed; the Supreme Court of the United States holding, that when the land had ceased to be used for a burial ground, and all the bodies there interred had been removed to other cemeteries, by order of the municipal authorities, and the society had been dissolved and become extinct, the grantor’s heirs became entitled to the land by way of resulting trust; and, after one of those heirs and the heirs of the trustees had conveyed their interests or supposed interests in the land to another person, the other heirs of the grantor could maintain a bill in equity against him to enforce the resulting trust, and for partition of the land, and for complete relief between the parties.
Having reversed the decree, the cause was remanded to the court below for further proceedings, in conformity with *8 the opinion of the appellate court. In the conclusion of the opinion, the Supreme Court say: “The court, having acquired jurisdiction of the bill upon both of these grounds,” (to enforce the resulting trust and to decree partition of the land), “was authorized to retain it for the purpose of administering complete relief between the parties, including the question of any allowance to which Grimshaw might be entitled for the expense incurred in the removal of the bodies from the burial ground to other cemeteries, or upon any other account.”
After the cause was received in the court below, under the mandate of the Supreme Court of the United States, the Supreme Court of the District, by its decree of April 1, 1897, decreed partition of the land, according to the rights of the parties as determined by the Supreme Court on appeal; and, by the same decree, referred the cause to the auditor “to take an account of what allowances should be made to Grimshaw for his disbursements in relation to the said lots of ground as shown in the testimony in the case, and the auditor shall take such additional testimony as the parties may adduce in respect to such disbursements, and shall make generally all allowances and charges proper to be made in stating an account between the plaintiffs and the said Grimshaw in respect of said lots.”
Under this reference, the auditor proceeded to take additional evidence and to state an account. In the account stated by him he has allowed the sum of $254.25 to Grimshaw in relation to title, that is to say, for examination of title and procuring of deeds, etc., with interest thereon from July 1, 1889, to the time of payment, as shown in schedule A, made part of his report. There was also embraced in this schedule an allowance of $25.37 for repair of fencing around the lots, with interest thereon from February 3, 1891.
The auditor also allowed for the disinterment, removal, and reinterment of bodies, by Grimshaw, the sum of *9 $1,157.75, with interest thereon from April 1,1889, as stated in schedule B, made part of his report.
Upon the coming in of the report of the auditor, the plaintiffs excepted thereto, and particularly to the allowances made in schedules A and B, and the interest allowed upon the amounts therein specified. The exceptions, however, were all overruled, and the auditor’s report, and all the allowances thereby made, were fully ratified and confirmed by the court, by its final decree of February 12, 1900; and from which decree this appeal is taken by the plaintiffs in the cause.
The record being of large volume, and therefore expensive to make up and print, in order to curtail the record and reduce the case on appeal to the questions desired tobe reviewed by this court, it was stipulated by counsel — “ that the only grounds of objection to the decree affirming the auditor’s report herein, to be made at the hearing of said appeal,- will be that the defendant Grimshaw is not, as matter of law, under the facts and circumstances set forth in this record, entitled to be allowed as a charge against complainants, or any of them, or the land itself, for any of the expenditures respectively claimed to have been made by him in respect of the north half of square 1089, and especially not for those claimed to have been made by him in connection with the exhuming, boxing, and removal of the bodies from the said north half of said square, nor for expenditures connected with obtaining and recording of deeds alleged by him to have been obtained to perfect the title to said land, nor for abstracts of title, legal advice, notarial fees, and the like in said connection, and that, as a matter of law, accordingly the complainant’s exception to the auditor’s report in respect of said allowances should have been sustained by the court, and the costs of the auditing charged to the said defendant; this stipulation to 'be taken as meaning that the court may, if it be of such opinion, disallow any or all of said items as improper *10 charges, not because excessive in amount, but because, as matter of law, they are not proper charges.
“It is also expressly agreed that no point will be made that the respective amounts allowed by the auditor on account of any of said expenditures were excessive, if, as matter of law, said defendant be entitled to reimbursement from complainants in respect of said item or items, and be entitled to make the same a condition of the vesting of the title in complainant Cummings to the lots allowed to him by the decree.”
Under this stipulation, we are confined in our review of the case to the determination of the question, whether the defendant Grimshaw is entitled, as matter of law, to the allowances made to him by the auditor in the schedules A and B, and confirmed by the decree of the court below ?
1. With respect to the allowances made as stated in schedule A, relating to the title to the ground in the north half of the square, such as for examination of titles, the preparation and procuring of deeds, and all attendant expenses thereof, and the other items mentioned in that scedule, we know of no principle upon which such allowances can be made, as for beneficial improvements of the premises. So far from being in any way beneficial to the plaintiffs in the case, the expenditures by Grimshaw in having title examined, and the procuring conveyances to himself, were simply made in providing himself with the direct means of resistance of the claim and title of the plaintiffs to their property, by a most protracted and expensive litigation which followed. Before a court of equity, in applying the maxim that “he who will have equity must do equity,” will make an allowance to a party wrongfully in possession as against the rightful owner, it must appear that what has been done in respect to the premises, and for which claim is made as for reimbursement or compensation, is in some way beneficial to the rightful owner or necessary for the maintenance of the property. But here, there is nothing in the claims for the allowances *11 embraced in schedule A that a court of equity could recognize as beneficial in any sense to the real owners of the lots in question. Green v. Biddle, 8 Wheat. 77, 79-81; 2 Sto. Eq. Juris., Sec. 1237; Anderson v. Reid, 14 App. D. C. 54, 72. The allowances in schedule.A were not proper to be made, and should, therefore, have been rejected.
2. The allowances embraced in schedule B, however, stand upon quite a different footing. They are made for expenditures that actually improved and enhanced the market value of the ground as it came to the possession of its real owner. Without such expenditure the ground would have remained valueless, except as the location of an old disused graveyard. If the cemetery had been abandoned and voluntarily surrendered by the society to the heirs of the original grantor of the land, before it could have been made marketable, or reduced to a condition of real utility, those heirs would have been under the necessity of incurring the expense of exhuming the remains, and of removing and reinterring them in some other cemetery. The work and expense of accomplishing that object, though not in fact intended for the benefit of the heirs of Stephriey Forrest, has, nevertheless, inured to the benefit of those heirs, and the amelioration and improvement of the ground. The improvement, it is true, was not of an ordinary character, nor was it made under ordinary circumstances. But it is not the particular character of the improvements so much as it is the principle upon which beneficial ameliorations are made by a wrongful possessor, that induces a court of equity to make reimbursement. The action of the court in such cases rests upon the broad principle of equity, derived from the civil law, that no man ought to enrich himself at the expense of another. We have in the books many instances of the application of the principle to a variety of circumstances, even more peculiar than the present, and many examples of such application are cited by Mr. Justice Bradley, in his very able and learned opinion, delivered on behalf of the Supreme *12 Court, in the case of Jackson v. Ludeling, 99 U. S. 513, 522. The claim for reimbursement in that case was for expenditures for repairs and restoration of a railroad, by parties who-, had improperly obtained possession thereof, under form and color of purchase. The same objection was made in that case, to the allowance of reimbursement, that is made in this, that the improvement was of a character and made under circumstances that ought to preclude the allowance. But the- court thought otherwise; and after reviewing many authorities treating of the principle as founded in the civil law, the court said: “ The rule is that the unlawful possessor shall be reimbursed the valué of his materials and the price of the workmanship. This was the rule adopted by the circuit court, and we think that its decision in this respect was correct, except that, in an equitable application of the rule, the allowance made to the defendants should not exceed the value of the improvements. For this amount, therefore, with interest, less the fruits received, the defendants should have remuneration.” And further, the court said : “After a careful examination of the authorities bearing upon the case, we find nothing which, properly considered, derogates from this view of the case. The class of cases which comes nearest to the present is that of lands which have been cleared up, and brought to a state of cultivation by embankments and ditches; though even here, there is a point of difference which it is material to notice; namely, that such clearings and reclamation of new land involved a change in its character, which was not produced by the rehabilitation of the railroad. The repairs made on the latter had the effect to restore the property to its first estate and use ; and the expenditures for that purpose are such as the true owner must necessarily. have made, in order to have the property in the only form which its nature and uses admit of, and which the mortgage contemplated.”
The allowance to Grimshaw for his expenditures for *13 exhuming, removing, and reinterring the bodies that bad been buried in the cemetery, would appear not to have been overlooked by the Supreme Court, in deciding the case of Hopkins v. Grimshaw. When that court declared that the court below had acquired jurisdiction over the case to administer complete relief between the parties, “ including the question of any allowance to which Grimshaw might be entitled for the expense incurred in the removal of the bodies from the burial ground to other cemeteries, or upon any other account,” it manifestly had in contemplation a claim for such allowance, though it was not then called upon to decide the question as to the right, the one way or the other.
That the allowance made for the. expenditure in exhuming, removing, and reinterring the bodies that had been "buried in the cemetery, as stated in schedule B, is proper, we think is clear, upon principle and authority. But there is error in the decree of the court, in directing and requiring that the complainants, or Horace S. Cummings, their grantee, should pay to the defendant, William H. Grimshaw, the full amount of such allowance; that is to say, the sum of $1,157.75, with interest thereon from the 1st day of April, 1889. Grimshaw himself being invested with title to one-sixth part or interest in the ground, deriving title thereto from one of the heirs of Stephney Forrest, should be made to bear the one-sixth part of the expenditure incurred in removing and reinterring the bodies that had been buried in the ground in controversy. The decree, therefore, should have -been that the complainants, or the said Cummings, their grantee, shall pay five-sixths of the sum of $1,157.75, to Grimshaw, with interest on that portion of the amount from April 1, 1889, subject to the credit of $315, the amount of costs awarded to the appellants on the reversal of the decree by the Supreme Court of the United States, and which amount was directed to be credited, by the decree of the court below, as of the date of the mandate of the Supreme Court.
*14 With respect to the allowance of interest on the amount proper to be paid as herein determined, we think that such allowance is just and proper ; and so we think in regard to. the costs that have been allowed and apportioned by the decree.
It follows from the views expressed that the decree of the court below must be reversed, and the cause be remanded to the court below, that the decree appealed from may be modified and made to conform to the foregoing opinion of this court. Each party to pay one-half the costs of this appeal; and it is so ordered.

Decree reversed and cause remanded.

A motion for rehearing made on behalf of the appellants was overruled.