## TAYLOR *v.* COLUMBIAN UNIVERSITY.

### TRUSTS AND TRUSTEES; WILLS.

In a suit to establish a resulting trust in their favor because of the failure of execution of an express trust created by will, by the heirs at law of a testator, who devised an estate to a certain university in trust, to create an endowment for the preparation of young men for service

in the Navy, and who provided that in event the university should fail to execute the trust, it should pass to another named university for execution, where the evidence showed that the first university had proceeded with the execution of the trust, twenty-four young men having been admitted to free scholarships under the endowment, two of whom had been admitted to the naval academy, although it failed to show that the net proceeds of the trust property had been devoted exclusively to the purpose of the trust, and where the answer of the other university, that it was willing to accept and execute the trust, if called upon to do so, was not contradicted, it was *held,* dismissing the bill, that there was sufficient to show that the trust could be executed, and that in some measure it was being executed. (Citing *Columbian University* v. *Taylor,* 25 App. D. C. 124.)

No. 2098. Submitted March 2, 1910. Decided April 5, 1910.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia, dismissing a bill in equity to declare void a trust created by will.

*Affirmed.*

The facts are stated in the opinion.

*Mr. J. K. M. Norton* and *Mr. Henry E. Davis* for the appellants.

*Mr. William F. Mattingly* and *Mr. Walter C. Clephane* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decree dismissing a bill filed by appellants, Brooke T. Taylor et al., as heirs at law of the late Admiral Levin M. Powell, to declare void a trust created by his will, and to recover certain real estate held thereunder by the George Washington University, the legal successor of the Columbian University.

The fifth item of the will which creates said trust reads as follows:

Item: Fifth, it being my wish and desire to make some contribution to the Navy of the United States of which I have been for so many years, I hope, a worthy member, and so in a measure to pay off the debt I feel I owe the honorable profession I have pursued through a long lifetime, and to that end to establish in the Columbian University in the District of Columbia, in a manner most conducive for that purpose, a means for the education of such young men as may be willing to profit therefrom in the branches of education best fitted to prepare them for officers of the line in the Navy of the United States, or for the places of mates or captains in the marine service of the United States. I do hereby give, devise, and bequeath to the said Columbian University and its successors, all those certain pieces or parcels of ground situated and lying in said city of Washington, and known and distinguished on the plats of said city as lot lettered C and the east 5 feet from front to rear of lot D, of Samuel D. King's subdivision of lots numbered one (1), two (2), three (3), thirty-two and thirty-three (33) in square numbered one hundred and twenty-six (126), duly recorded in the surveyor's office of said city, beginning for the said parcels at a point on I street north, distance seventy-eight (78) feet west from the corner of I and 17th street, and running thence north, parallel with 17th street one hundred and five feet to a fifteen-foot alley; thence west with said alley thirty-five (35) feet; thence south one hundred and five (105) feet to the north line of said I street; thence east with said I street, thirty-five (35) feet to the point of beginning, together with all and singular the improvements, rights, privileges, and appurtenances to the same belonging, in trust for the purposes following, and for no other purpose whatever; that is, in trust to create an endowment to be known as the Admiral Powell endowment, and with that view to take the said property, and the same to rent from year to year, or to lease for a term of years, as to the trustees and overseers of said university shall seem best; and the rents, issues, and profits arising therefrom, after first paying out of the same the taxes, insurance, repairs, and other expenses, to devote as far as the same will go, under

such regulations as to the said trustees and overseers may seem best, to the free education of such young men that may desire to take advantage of the said endowment by way of their preparation for entrance into the Naval Academy at Annapolis, Maryland, or such as may fit them to become mates and masters in the merchant marine service of the United States; such preparation should be confined in the case of each young man so embracing the advantages of the said endowment to one year, and to include principally the studies following; that is to say, arithmetic, geometry, trigonometry, and astronomy, with the use of astronomical instruments, the construction of charts, and the application of this knowledge to hydrographical survey by latitude and longitude, and, if possible, such study as will give to such young men a knowledge of Scientific voyages of discovery, and other matters relating to war and commerce on the high seas; and it is further my desire that this endowment shall, if possible, embrace in its benefits such apprentices as, having filled their time in the great manufactory establishments of the country, may apply for appointment from civil life in the steam engineer department, of the United States Navy; to such I would like to have a year's education afforded under such regulations as the president and faculty of the university may think proper. And should it any time, for any reason, be impossible to carry into effect the trusts, provisions, and conditions having relation to and herein imposed upon this bequest by me made for the creation of the endowment described on the part of said Columbian University, or should it be made manifest at any time that the said trust is not being administered in accordance with my wishes and desires, and in conformity with the conditions specified, then and in such case it is my will and desire that the said endowment shall be placed in other hands, and to that end and on behalf of the contingency mentioned, I do hereby give, devise, and bequeath the said property to the John Hopkins University, of Baltimore, in the State of Maryland, and its successors, to be taken and held by the said university or the officers thereof proper for that purpose, upon the trust and for the purposes hereinbefore particularly set forth in

the bequest of said property to the Columbian University, in such a manner that the purposes of the said endowment, as by me indicated, may be fully carried into effect."

The case has been before us on a special appeal allowed from an order overruling a demurrer to the bill. *Columbian University* v. *Taylor,* 25 App. D. C. 124. It was then held that the trust was not void for uncertainty or incapacity of execution apparent upon its face. It was also said: "If there be a right of action at all, it must fall under the ninth paragraph of the bill, which alleges that, after efforts made to carry out the intention of the testator, the incapacity of the execution of the trust has been demonstrated. · The trust created by the will is not a general charitable trust, but is expressly limited to the purposes specified,. and no other. If the trust has failed of its object by reason of the facts alleged, and thereby come to an end, a resulting trust at once arose in favor of the heirs at law of the testator, enforceable by this proceeding in equity. *Hopkins* v. *Grimshaw,* 165 U. S. 342, 353, 41 L. ed. 739, 743, 17 Sup. Ct. Rep. 401."

The ninth paragraph of the bill referred to reads as follows:

"That said defendant, the Columbian University, issues, and. has, for more than sixteen years, issued, a catalogue, publishing its classes, the names of all its students, its instructors and officers, and the many and various schools of education it maintains; that this catalogue is widely circulated throughout the United States; that among other things it has, from time to time, during the past sixteen years, advertised "the Powell scholarship;" that such advertisement was contained in the said catalogue for the scholastic years 1900 and 1901, as will more particularly appear by reference to pages 94 and 95 of said catalogue, which is hereafter filed as Exhibit No. 3, and which it is prayed may be taken and considered as a part hereof. That substantially the same advertisement had been inserted in said catalogue issued from time to time for the past sixteen years.

"That notwithstanding the said wide circulation of said advertisement, the said defendant, complainants are informed, be-

lieve, and therefore charge, has been wholly unable to execute said trust."

The following paragraph supplements the ninth:

X. "That the complainants are advised and therefore charge and allege that said devise is so indefinite and the trust intended to have been created thereunder so uncertain as to its objects and subjects that it was impossible of execution by said defendant, the 'Columbian University,' or by the said defendant, the 'Johns Hopkins University,' had in no wise been executed by either of them in any respect whatsoever, and that it is now and ever will be impossible of execution by either of them."

The George Washington University, which is the Columbian University under a change of name authorized by law, thereafter answered the bill, alleging that it had entered upon the execution of the trust by maintaining an equipment and faculty for teaching the subjects embraced in the trust; and that it is and has been teaching the same, and providing free scholarships therefor.

The Johns Hopkins University also answered, alleging, upon information and belief, that its codefendant was executing the trust, and further alleging that it is "able, ready, and willing to accept said property under said devise and to carry out the trusts thereof, and the intention of said testator as expressed therein, at any time when, for any reason, it may be entitled or called upon to do so."

It appears from the testimony that, beginning with the year after the probate of the will, in A. D. 1885, the Columbian University published in its catalogue that, under the Admiral Powell endowment, free scholarships would be given to a limited number of pupils who would prepare for admission to the United States Naval Academy. Subsequent catalogues, from year to year, set out the terms of the trust in greater detail, and set out the courses of instruction indicated in the trust. It was shown that between 1891 and the date of taking testimony, twenty-four youths had been admitted to free scholarships under said endowment, some of these continuing for

more than one term.    At least two of these passed into the Naval Academy.

While this testimony does not show with certainty that the expectations of the testator have been fully answered, and is particularly defective in that it fails to show that the entire net proceeds of the trust property have been devoted exclusively to the purposes of the trust, and none other, it seems to be sufficient to show that the trust can be executed, as well as that, in some measure, it is being executed.    Whether the trust could be better performed is not the question; nor would it avail the appellants if it were not being performed at all by the first taker, for the trust cannot result to them in such event. In case of the failure of the first taker, the trust passes to the Johns Hopkins University, whose answer, as we have seen, states its willingness, readiness, and ability to accept and execute the trust whenever it may be entitled or called upon to do so. There is no testimony tending to contradict this averment of the answer, and it must be taken as true.    It has been contended by the appellee, in support of the decree, that the evidence shows that only a part of the heirs of the testator have joined in the bill.    This involves a tedious examination of a family history extending back through several generations, that we think it unnecessary to enter upon, in view of the conclusions before stated.

In our opinion, there was no error in dismissing the bill, and the decree is affirmed, with costs.                    *Affirmed.*

On application of the appellants an appeal to the Supreme Court of the United States was allowed April 11, 1910.