## Brewer et al. v. Baxter's Ex'r et al.

Oct. 12, 1943.

John Noland and G. C. Robbins for appellants.

J. P. Chenault and H. D. Parrish for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Fannie T. Baxter died testate in September, 1942. Her will was executed in April, 1923. The first three clauses of the will make certain specific devises, none of which are in controversy. Clause 4 of the will, out of which this controversy arises, reads: "The remainder of my real estate and the remainder of my personal property, if there should be any, I devise in trust to my executor to be held for the use and benefit of the Church of Christ to which I belong. The income derived from said remainder to be used in having the gospel of said church preached in destitute places in the United States, and at such churches where no instrument of music and no invasions have been made upon the doctrines of the church to which I now belong. My said executor is to pay the net income from said residue to the governing authorities of said church, to be applied as above directed."

In December, 1942, Frances Tribble Brewer and Baxter Tribble, as plaintiffs below, and appellants in this appeal, filed this action in equity in the Madison circuit court against Chenault Woodford as executor under the will of Fannie T. Baxter, in which they alleged that they, together with three infant children of a deceased sister of testatrix, are the only surviving heirs at law of testatrix and that the object or purpose of the trust referred to and intended by clause 4 of the will had failed and that the residue of testatrix' estate, devised or attempted to be devised under that clause of the will, descended to them under the statute of descent and distribution. Plaintiffs allege that at the time testatrix wrote her will she did not belong to the "Church of Christ" but belonged to the "Christian Church" at Brookstown, in Madison county, and that was the church she referred to in her will and she did not intend that any of her property or the income therefrom should be paid to the governing authorities of any church other than the Brookstown Christian Church; that the Brooks-

town Christian Church had failed and become extinct since the writing of the will and therefore it was impossible to carry out the trust provisions of that part of the will in accordance with the expressed intentions of the testatrix and the intended devise thereby became a lapsed devise and remained a portion of her estate not disposed of by her will. It is further alleged that paragraph 4 of the will failed to point out with reasonable certainty the purpose of the charity and the beneficiaries thereof, and failed to provide a method or an agency by which the trust could be carried out or executed with reasonable certainty in a manner to effectuate the expressed desire or intention of the testatrix.

Briefly stated, the contentions of plaintiffs, as set out in the petition and in their brief on this appeal, are that clause 4 of the will had failed because (1) the Christian Church or Church of Christ, by either name it may be known, located at Brookstown at the time testatrix wrote her will has now become extinct, and (2) if she did not have specific reference to the Brookstown Christian Church or Church of Christ at Brookstown to which she belonged at that time, and intended that the Church of Christ or some unit thereof as distinguished from the Christian Church was intended to be the beneficiary of the will, yet, the trust or charity must fail because the Church of Christ has no central organization or governing body authorized to receive, distribute or apply the trust fund and the means through which the charity was to be given and applied are nonexistent. By subsequent pleadings issue joined, as indicated above, and the proof was taken and the cause submitted to the chancellor upon the pleadings and evidence, whereupon the chancellor entered judgment in favor of the defendants adjudging that the executor-trustee of the will shall pay the net income derived from the property described in clause 4 to the "governing authorities of the Church of Christ" to be used for the purpose provided and directed in that clause of the will.

There is but little, if any, conflict in the evidence and no issue of fact is presented with respect to which party, if either, has the preponderance of the evidence. Briefly stated, the substance of the evidence is that testatrix was a charter member of the Christian Church organized at Brookstown in Madison county in the year 1889. In the year 1909 a controversy or disagreement

arose between the members of the church because of the introduction of instrumental music in the worship, which controversy resulted in a division of the Christian Church, and testatrix being opposed to the introduction of instrumental music in the worship, adhered to that faction of the church which remained at Brookstown. At the time testatrix wrote her will in 1923 the membership of that particular church at Brookstown (the Church of Christ) was composed of only about seven or eight members. It remained in existence, however, until about the year 1931 at which time the money in the treasury was distributed and the real estate reverted to the donor pursuant to a provision in the deed and was sold about the year 1934 or 1935 as a part of the assets of the estate of one Ruf McCord.

In September, 1935, testatrix wrote a codicil to her will modifying the first three clauses, or some of them, and also wrote a second codicil in December, 1935, further modifying the first three clauses, or some of them, and also modified the first codicil but she did not modify or make any reference to clause 4 of the will. At the time she wrote the codicils the Church of Christ at Brookstown had long since become extinct and evidently testatrix knew that there was no Church of Christ in existence at Brookstown to which she belonged. This circumstance, considered together with the language contained in clause 4 of the will in which testatrix directed the residue of her estate or the income therefrom to be used in having the gospel of said church preached "in destitute places in the United States and at such churches where no instrument of music and no invasions have been made upon the doctrines of the church" warrant the conclusion that testatrix did not have in mind or intend to restrict the charity devised or attempted to be devised in clause 4 of the will to that particular unit of the Church of Christ at Brookstown. However, we are still confronted with the other phase of the question: viz., is the gift or charity attempted to be bestowed by testatrix incapable of administration and therefore invalid on the ground that the Church of Christ has no central governing authority or body or any one with authority to receive, distribute or apply the trust funds so as to effectuate the purpose and intent of the testatrix? In the closing sentence of paragraph 4 of the will, so far as is pertinent, testatrix said: "My said executor is to pay the net income from said residue to the *govern-*

*ing authorities* of said church, to be applied as above directed.'' (Our italics.) We think this language makes it clear that testatrix was laboring under the opinion and belief that there existed a central body or governing authority possessing power and jurisdiction over the various units of the Church of Christ with authority to receive and distribute the trust funds among the various units for the purpose set out in the will.

In paragraph 3 of the answer defendant alleges that under the will it was manifestly the purpose and intent of testatrix that the executor of her will and the officers or governing authorities of her church act as joint trustees, the former to handle and manage the trust estate and procure income therefrom, and the latter (governing authorities) to have the duty and privilege of selecting or choosing which place and/or which churches should be the real beneficiaries of the will, and later on, in the same paragraph of the answer, it is further said: ''Defendant states that he is not a member of said Church of Christ, but that he is informed, believes and therefore alleges that while each separate Church of Christ, or congregation, is a free, separate and independent unit, and that there is no central or higher body or authority with right to exercise control over, or with any power or right of property in any of said Churches of Christ, or of their properties, still all of said Churches of Christ recognize each other as sister churches, preaching and practicing the same creed and doctrines, with recognized ministers, and that each of said Churches of Christ accepts members from sister churches of said name upon transfer by church letter from any such sister church into full membership and fellowship.''

Defendant further alleges in his answer, and so contends in his brief, that the present church officers of any one of the now existing independent units of the Church of Christ could and would exercise and discharge the duties imposed by the will upon the governing authorities of the church referred to in the will. It is not only admitted that the Church of Christ to which testatrix belonged has no central or higher body, or governing authorities, but all the evidence is to the same effect. It is at once apparent that testatrix was laboring under the erroneous opinion and belief that there existed a governing body of the church possessing power and jurisdiction over the various units of the church, having

the right to receive and distribute the funds as provided in the will. Had testatrix known that there existed no central power or governing authority over the various church units, evidently she would not have attempted to vest a power or authority in a body that did not exist, and since she did not know the situation that actually existed with respect to lack of a governing authority of the church, it would be mere speculation and guess to undertake to say whether or not she would have attempted to bestow the charity at all, or if so, what unit or units of the church she would have named as beneficiary; whether a part or all of them, since such church units might have existed throughout the reaches of the United States; or what method of application and distribution of the trust funds she would have made. Both the will and the judgment of the chancellor specifically direct the executor to pay the trust funds to the "governing authorities" of the church but neither gives him any authority to pay it to any one else, not even to the ministers and officers of the various independent units of the church, which in no sense would constitute a "governing authority of the church" in the meaning of that phrase as used and understood in church parlance.

It is the well-known rule in this jurisdiction, and all others so far as we know, that when the object or purpose of a charity or trust fails the property attempted to be devised or donated reverts to the donor or to his estate and is unaffected by the devise. Carlisle County v. Norris, 200 Ky. 338, 254 S. W. 1044, 1045, 38 A. L. R. 41; Taylor v. Rogers, 130 Ky. 112, 112 S. W. 1105; Pringle v. Dorsey, 3 S. C. 502; Hopkins v. Grimshaw, 165 U. S. 342, 17 S. Ct. 401, 41 L. Ed. 739; Trustees of Cumberland University v. Caldwell, 203 Ala. 590, 84 So. 846; and Grundy v. Neal, 147 Ky. 729, 145 S. W. 401. In the present case it might not be said that the object of the trust has failed but rather the means through which it was to be carried out or administered have failed or never existed, which we think is governed by the same principle as where the object of the charity once existed but had failed. In Fontain v. Ravenel, 17 How., U. S. 369, 15 L. Ed. 80, it was held that when the means through which a trust is to be given and applied have failed the trust also fails and the fund belongs to the donor or his estate because it was never separated from it.

Under the limited application of the cy pres doc-

trine in this jurisdiction, it is the rule that when the direct and specific object of a charity fails a court of equity may substitute some similar or kindred object so as to give effect to the donor's intent, but the court cannot declare an object for him. But we do not think that rule is applicable to the facts and peculiar circumstances of the present case. Here, as stated above, the means or method of administering and applying the trust are nonexistent without any substitute or alternative method being provided in the will either expressed or by necessary implication. We think that for the court to undertake to substitute a method along the lines suggested or contended for by defendant would be in effect to rewrite testatrix' will. The purpose of the testatrix was indeed commendable, but unfortunately it must fail because the means through which the charity was to be given and applied are nonexistent.

Wherefore, the judgment is reversed and remanded for proceedings consistent with this opinion.